(69 Misc. Rep. 472.)

### DE BRAUWERE v. DE BRAUWERE.

(Supreme Court, Special Term, New York County.    November 29, 1910.)

1. SUBROGATION (§ 41*)—ACTION AT LAW.
   The doctrine of subrogation is cognizable at law, as well as in equity.
   [Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 109–118; Dec. Dig. § 41.*]

2. SUBROGATION (§ 24*)—EXPENDITURE BY WIFE FOR NECESSARIES—RECOVERY OF HUSBAND.
   A wife, abandoned by her husband, who departed the state, having obtained necessaries for the family and paid therefor with her private means and money earned by her, may, under the theory of subrogation to the rights of those who furnished the necessaries, recover of her husband the amount expended therefor.
   [Ed. Note.—For other cases, see Subrogation, Dec. Dig. § 24.*]

Action by one De Brauwere against one De Brauwere. Defendant ·demurs to the complaint. Demurrer overruled.

Thomas F. Doyle, for plaintiff.
Lucius L. Gilbert, for defendant.

WHITNEY, J.  Plaintiff, as she avers, is the wife of the defendant. On September 1, 1904, when they were residing in the state of New York, he, without cause, abandoned her and her children, infants of the age of 18 and under, and has since contributed nothing to their support, except the sum of $50. She was unable to procure necessaries for herself and their children upon his credit, because he had none; and he removed to the state of New Jersey, where he has since resided in the city of Newark. During this period she has herself furnished the necessaries, partly by working as a seamstress and janitress, and partly by drawing upon an inheritance from a great aunt, which she has nearly exhausted. Judgment is demanded for the total amount so expended.

Plaintiff's theory is that she is subrogated to the rights of the persons who furnished the necessaries and whom she has paid. Both sides agree that the case is without a precedent, although the situation is a common one; but the ability of women in such a plight to obtain the best class of counsel is so comparatively infrequent that the novelty of the suit should not deter the court from its most careful consideration. If it rests upon genuine analogy with cases already decided, and there is no good reason, established legal doctrine, or consideration of public policy to the contrary, then it is proper to infer that the law does actually protect those whom it ought to protect. The doctrine of subrogation is very broadly stated in this state, and, since the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

recovery is often, although the doctrine is equitable in origin, of a sum of money only, it is cognizable at law as well as in equity. We have adopted the language of the courts of other states that it "is founded on principles of equity and benevolence, and may be decreed where no contract or privity of any kind exists between parties"; that it "is broad enough to include every instance in which one party pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter," provided that it be not invoked by "mere volunteers and intermeddlers." Dunlop v. James, 174 N. Y. 411, 415, 416, 67 N. E. 62. Where complainant's action is based upon general equitable rules, and he is not a mere volunteer, "it is a remedy which equity seizes upon in order to accomplish what is just and fair as between the parties." Pease v. Egan, 131 N. Y. 262, 273, 30 N. E. 102; Arnold v. Green, 116 N. Y. 566, 571, 572, 23 N. E. 1; Gans v. Thieme, 93 N. Y. 225; Cole v. Malcolm, 60 N. Y. 363.

The nearest analogy to this case is furnished by that of a third party who, at request of the wife, furnishes her with money with which to buy necessaries for the deserted family. By the old common law such a person could not recover of the husband, "because, though borrowed under the pretext of purchasing necessaries with it, she has the power of wasting and misapplying it;" and this, "though the most unkind and cruel usage of the husband was proved, and that the money lent was actually laid out and applied for necessaries." But "the Master of the Rolls held that the lender of the money should stand in the place of those tradesmen who had supplied the wife with goods, and be let into a satisfaction for so much as he could prove to have been advanced or delivered to her by them as necessaries, but for nothing else." Clancy's Rights of Married Women (Ed. 1837) p. 53. The decision referred to is that of Sir Joseph Jekyll in Harris v. Lee, 1 P. Wms. 482, in 1718. It has been followed in England ever since, and it was reconsidered and approved in Jeuner v. Morris, 3 De G. F. & J. 45; Lord Campbell suggesting as its basis an equitable assignment from the tradesmen to the lender, while Lord Justice Turner placed it upon the broad ground that equity supplies the remedy which the forms of law do not give. These authorities are generally approved in this country, the leading case being Kenyon v. Farris, 47 Conn. 510, 36 Am. Rep. 86; the court saying, as to the husband's liability for money advanced to buy necessaries, that the law "only discharges its duty to the wife by making it impossible for him to escape liability for these, irrespective of the method by which he forces her to obtain them." See, also, Leuppie v. Osborn, 52 N. J. Eq. 637, 29 Atl. 433. The doctrine has been generally approved by text-writers and annotators, and seems to have been disapproved only in Skinner v. Tirrell, 159 Mass. 474, 34 N. E. 692, 21 L. R. A. 673, 38 Am. St. Rep. 447. That decision was by a divided court, as shown by the last sentence of the opinion, and while the names of the minority judges are not given, one of them must have been Mr. Justice Holmes, unless he had changed the views expressed by him in his note to 2 Kent, Comm. (12th Ed.) 146, where he suggested as the possible basis of the rule

"that the lender is subrogated to the rights of the party furnishing the supplies." And the doctrine has come into this state as a rule of common law without discussion or question. Wells v. Lachenmeyer, 2 How. Prac. (N. S.) 252; Kenny v. Meislahn, 69 App. Div. 572, 75 N. Y. Supp. 81.

The rule has nowhere, so far as I am aware, been applied to the case of advances by the wife herself, but a wife is entitled to the same remedies as any other creditor. Manchester v. Tibbetts, 121 N. Y. 219, 24 N. E. 304, 18 Am. St. Rep. 816. I see no reason why she should not have the same right of equitable assignment, or subrogation, or whatever other equity may be the basis of relief in these cases, as any friend of hers who may have put up the necessary money. The friend who advances her the money which she thereafter uses in purchasing the necessaries is one step further away from the husband than herself. His equity is worked out through her, and is certainly not inferior to hers. Even a century ago she could recover money spent in supporting the infant children after being freed from the disabilities of coverture by divorce. Stanton v. Willson, 3 Day, 37, 3 Am. Dec. 255. In this state she is now freed from the disabilities by legislation. Must a wife abandoned among strangers be ruined, or starve, or work herself to the bone, without hope of repayment from the husband whose legal and moral duty it is to support her, when one abandoned among friends can live upon the proceeds of loans which the husband is bound to repay? If she has a little money laid up of her own, why should she not preserve her dignity by expending it until it is exhausted, without forfeiting the right to relief which any good Samaritan would have had if she had begged? When it is used up, why can she not earn more and apply it under the same protection which the law would give to money applied to the same use by a charitable neighbor? She is no volunteer, but the agent of the husband in ordering the necessaries, under an irrevocable authority which he gave her when he married her. By every rule of propriety she is the person most proper to step forward when it is necessary to add somebody else's credit in assistance of his. Her position is like that of an acceptor supra protest for the honor of her husband, and her remedy should be as effectual.

The contention may even be made, although not necessary to the disposition of this case, and therefore not here passed upon, that the position of the wife is much stronger than that of the third party, and not equitable in origin; that it is based upon an absolute right to support from her husband; that at common law she could not directly enforce this right because of her disability to sue; that therefore she was restricted to her authority as his agent to order necessaries, except in those states where by the local law she could sue for maintenance without a legal separation; that since her disabilities have been removed by recent statutes she can sue her husband directly in this state for breach of the contract for support. It may be suggested that the plaintiff, when first deserted, could have brought an action for separation under the statute, and could have asked and obtained alimony in that action, and that, having failed to invoke that remedy then,

she should be left remediless now. In Pierce v. Pierce, 9 Hun, 50, a widow put in a claim against her husband's estate, alleging that she had been forced by his fault to abandon him. The court dismissed her claim on the ground that she should have brought an action for separation. She did not appeal (the affirmance by the Court of Appeals at 71 N. Y. 154, 27 Am. Rep. 22, was upon the appeal of the other party from a different part of the decree), and the language of the General Term is broad enough to defeat this case; but to this extent it is obiter.

If the remedy which is invoked in this class of cases is equitable, and, therefore, to a certain extent discretionary, it may perhaps be properly denied in the case of a wife abandoning her husband, requiring her instead, by action for a separation, to seek a prompt adjudication upon the propriety of abandonment. The case where the husband abandons the wife is a very different one. If either is under a duty to seek the prompt approval of the court, it is he. At any rate, it would be unreasonable to require her, when her husband has departed from the state, to go to the expense of tracing him and serving him with process by publication elsewhere.

The demurrer should therefore be overruled, with costs, with leave to answer within 10 days on payment of costs.