WILLIAM BLACK, Appellee, v. CHICAGO GREAT WESTERN RAILROAD COMPANY, Appellant.

**NEGLIGENCE:** Contributory Negligence—Obstructed Crossing.
1 Evidence attending an accident at an obstructed crossing reviewed, and held to present a jury question on the issue of contributory negligence.

**NEGLIGENCE:** Speed-Limiting Ordinance—Instructions. Instructions need not be given to the effect that plaintiff would not,
2 be excused for not looking for an approaching train because of the existence of a speed-limiting ordinance, when the trial carried no issue, directly or indirectly, thereon,—when plaintiff presented no such claim.

**TRIAL:** Conflicting Instructions. Instructions are not necessarily conflicting and misleading because, in one paragraph, the court
3 told the jury that a speed in excess of six miles (fixed by a speed-limiting ordinance) would constitute negligence, and in another paragraph, allowed the jury to find negligence from operating the train at a *greater* speed.

**MASTER AND SERVANT:** Workmen's Compensation Act—Subrogation Against Third Party. A master who has, under the
4 Workmen's Compensation Act, paid compensation to his serv-

ant because of the independent wrong of a third party, is sub-
rogated, to the extent of such payment, to the rights of the
servant against such third party.  (Sec. 2477-m6, Code Supp.,
1913.)

**MASTER AND SERVANT:**  Workmen's Compensation Act—Em-
ployee's Action Against Third Parties.  A servant who has suf-
fered an injury which arose out of and in the course of his
employment, but by reason of the independent wrong of a
third party, may, after collecting compensation from the master
under the Workmen's Compensation Act, maintain an action
against said third party for *all* damages suffered by him; but
in such action the master should, in some proper manner, be
brought into the action, in order to protect him in the amount
paid to the servant.  (Sec. 2477-m6, Supp., 1913.)

*Appeal from Polk District Court.*—THOMAS J. GUTHRIE,
Judge.

NOVEMBER 22, 1919.

ACTION at law to recover damages for injuries received
by plaintiff, in a collision between an auto truck, in which
he was riding, and an engine and train operated by defend-
ant.  Trial to a jury, and verdict and judgment for plain-
tiff.  The defendant appeals.—*Affirmed.*

*Carr, Carr & Cox,* and *Donald Evans,* for appellant.

*Brammer, Lehman & Seevers,* and *Tourtellot & Don-
nelly,* for appellee.

PRESTON, J.—The issues, as stated by appellant, are
that they are the usual questions of negligence and con-
tributory negligence, and in addition thereto, the following:

Was the plaintiff, after having received from his em-
ployer payments due him under the provisions of the
Workmen's Compensation Act, entitled to maintain this
action for damages against the defendant?  One or two
other questions are argued briefly, but the principal ques-
tion, and the one most argued, is the one last stated.  The

trial court held the issues of negligence and contributory negligence, under the evidence, to be issues of fact, and submitted the same to the jury. It also held that the recovery by plaintiff from his employer of benefits of the Compensation Act did not prevent his recovery of damages from the defendant for its negligence, and instructed the jury, in case it found for plaintiff in excess of $378, to deduct from the amount to which they found plaintiff entitled, the amount he had received as compensation. The amount of compensation which had been paid plaintiff by his employer was $378. The verdict and judgment were for $7,197. Plaintiff has not appealed, and says in argument that he does not object to the deduction made; so that the question whether the deduction was properly made is not in the case. If it was not properly deducted, the defendant may not complain, since the prejudice, if any, in that case is against the plaintiff. Whatever may be said in the opinion by way of discussion, we shall not determine the question whether such deduction was or was not properly made, in this case. The one question involved, in so far as it involves the construction of a section of the Workmen's Compensation Act, will be stated later. A brief statement of the facts which are undisputed, or which could have been found by the jury, will be made, in so far as they have a bearing on the questions presented.

It appears that plaintiff was injured about 9:30 A. M., November 8th. Plaintiff, together with Young and De Fore, all employees of the Ware Transfer Company, were returning to the office of the company, after delivering a piano in South Des Moines. At the time of the collision, they were riding in a motor truck, which weighed 4,200 pounds, and was driven by De Fore. The truck was equipped with pneumatic tires in front, and solid rubber tires in the rear. The brakes were in order. There

1. NEGLIGENCE: contributory negligence: obstructed crossing.

was an enclosed cab over the seat where the driver and his companion sat, with wind shield, glass in the doors on either side, and a glass window in the side back of the door. De Fore, the driver, was sitting on the left, or west, side of the truck. Young was at his right, and plaintiff was sitting on Young's lap. The railway track runs at an angle, but substantially east and west. The train was going west. The truck was going north on East Sixth Street, which crosses the railroad track near Shaw Street, a street running east and west. At the point of the collision, the street is practically level for a distance of 300 or 400 feet, and is paved with concrete. The paving is 24 feet wide. The railway is constructed upon an embankment, and the paved portion of the streets and the tracks is higher than the surrounding ground. On the east side of Sixth Street, for a distance of some 300 feet south of the tracks, there are houses and trees extending to within about 50 feet of the track, which obscure the vision to the east, of persons traveling north. There is a large tree near the northwest corner of the house nearest the track, which tree had shed its foliage. As plaintiff approached the track, the truck was going at the rate of from 8 to 10 miles per hour, and the train, 18 to 20 miles an hour, according to plaintiff's testimony, but considerably less than that, according to defendant's witnesses. Prior to the accident, it had been raining and snowing to some extent, and the street was wet and slippery. Both plaintiff and the driver knew they were nearing a railroad crossing. Plaintiff says:

"As we approached the crossing from the south, I looked and listened; as we got up within probably 75 feet of it; I listened to see if I could hear any sounds or any sign of anything coming, and I did not hear anything. When we got up about 40 or 50 feet, I should judge, I saw the engine coming, and I guess we must all have seen it about the same time. I was looking ahead and sideways too, always.

I started to look and listen about 75 or 100 feet south of the track, and I did not hear anything, and then we got up 40 or 50 feet, and I saw the engine coming, but did not hear any bell or other warning. I did not hear the bell on the locomotive ring at any time before or after I reached a point 100 feet south of the crossing; did not hear a signal of any kind. I commenced to listen when I was about 75 feet from the track. I looked all the time from the time we came within 75 feet of the track; didn't look east all the time, but looked several times, and kept looking all the time until we came to 50 feet from the track, and saw the engine. * * * The driver put on the brakes, and it seemed as if the truck kind of started to slow down, as quick as he saw the engine. De Fore put on the brakes at the time I saw the engine, and it checked the truck or slowed it down; * * * after the brakes were applied, the truck didn't continue in an exactly straight course,—I don't know whether it skidded or whether the driver turned the front wheels of it off, but it seemed like it went a little bit sidewise; the back end went a little bit to the east, when we went up to the track. The brakes were on from the time when they were first applied until the truck reached the track."

As the truck approached the track, plaintiff did not say anything to the driver, before they reached the point where they saw the approaching train, because, as he says, he saw the driver was looking and listening for a train, the same as he was.

"I was looking, just the same as anybody riding in a car, coming up to a railroad crossing, looks to see if anything is coming, whether they are driving the car or not. I saw the train just about the time I felt the car slow down. I had no purpose to tell De Fore of the approach of the train, as long as he was looking. If he had been looking some other way when I had seen the train, I

would have told him, but he was looking, the same as I was."

The driver gave similar testimony, and that, when he and plaintiff saw the engine, he applied the brakes to the truck, which skidded for a distance of about 50 feet to the track, where it was struck by the locomotive; that the car stopped right on the track, practically as the engine struck. Another witness testifies that he was not in a position to see the truck skid, but that he noticed skid marks, with the first mark about 15 feet from the rail. The driver further testifies that the truck began to slide immediately as he put on the emergency; that he put on both pretty near the same time he saw the engine; that they all saw the train at the same time; that plaintiff said there was a train coming, and they all saw it at once; that he had the brakes on as he said it, and had commenced to slow down. The evidence is that, when they saw the engine, it was about 150 feet east of the crossing. There were other witnesses for both plaintiff and defendant. Defendant's witnesses give a somewhat different version as to some of these matters which have a bearing on the question of plaintiff's alleged contributory negligence.

After the plaintiff's injury, he was paid $378 by his employer, under the Iowa Compensation Act.

The city ordinance was introduced in evidence. We have not gone into the evidence as to the alleged negligence of defendant, nor as to the extent of plaintiff's injuries, because such matters are not argued. As said, the principal point in the case is whether defendant's point is well taken, that plaintiff cannot maintain the action because of the payment of compensation under the Compensation Act. We shall take up the other matters first.

1. It is contended by appellant that the plaintiff was, as a matter of law, guilty of contributory negligence, and that its motion for a directed verdict should have been sustained. The argument is that either plaintiff approached

the track, or allowed the driver to approach it, at such a rate of speed that it was impossible to stop after reaching the point where the approach of the train could be seen, or else he did not look, or do anything to induce the driver to reduce the speed of the truck, until he reached a point 15 feet from the track. Under the evidence, the jury could have found that this distance was greater than 15 feet. On the duty of plaintiff to look and listen, they cite *Chicago, M. & St. P. R. Co. v. Bennett,* 181 Fed. 799; *Evans v. Baltimore, C. & A. R. Co.,* 133 Md. 31 (104 Atl. 112). The facts in those cases are, in some respects, quite different from the evidence in the instant case. It is also argued that, though the plaintiff was not driving the truck, it was his duty to exercise care in approaching the crossing, and that they approached the crossing without protest on the part of plaintiff. On this they cite *Beemer v. Chicago, R. I. & P. R. Co.,* 181 Iowa 642; *Willfong v. Omaha & St. L. R. Co.,* 116 Iowa 548; *Morris v. Chicago, B. & Q. R. Co.,* 101 Neb. 479 (163 N. W. 799); *Fluckey v. Southern R. Co.,* 242 Fed. 468. We are unable to see anything that plaintiff could have done that he did not do. It is true he says that he didn't tell the driver about the train, because he saw that the driver noticed the train at the same time plaintiff did. We shall not review the cases. Each case must depend upon its own facts. The plaintiff's view was obstructed. The witnesses describe what was done as they approached the crossing. Plaintiff's evidence is that, when they came from behind the obstructions, they saw the train about 150 feet east. With the train going 20 miles an hour, this would be about 30 feet a second; so that, under this view of the testimony, the train would reach the crossing in about 5 seconds after the parties saw the train. Defendant's plat shows that, from a point 75 feet east of the crossing, plaintiff could see 205 feet east up the track. It would take the train about 7

seconds to traverse this distance. But, looking east or northeast from that point, one would have to look between the tree farthest north and the one south of it, or would have to look through or under the north tree. This would be true, also, from a point 50 feet east of the crossing. Under the evidence, we think the question as to the alleged contributory negligence of plaintiff was for the jury to determine. Appellee cites at this point *Schulte v. Chicago, M. & St. P. R. Co.,* 114 Iowa 94; *Gray v. Chicago, R. I. & P. R. Co.,* 143 Iowa 268, 277; *Case v. Chicago G. W. R. Co.,* 147 Iowa 747, 751; *Platter v. Minneapolis & St. L. R. Co.,* 162 Iowa 142, 158; *Bettinger v. Loring,* 168 Iowa 103, 113.

2. Defendant requested the court to instruct the jury that, in considering the question of plaintiff's contributory negligence, he would not be excused from looking and listening for the approach of the train when

2. NEGLIGENCE: speed-limiting ordinance: instructions.

the truck in which he was riding reached the point where looking would be effective, because of the fact that there was an ordinance limiting the speed of the train to six miles per hour. The thought is that plaintiff did not rely upon the fact that there was an ordinance within the city. with which he presumed that the train of defendant would comply, and that he was not misled by any failure to comply with the speed ordinance. This request is based upon the further testimony of plaintiff, which is a little different from defendant's statement of it. Witness said:

"I don't know as I noticed how much you could see from 75 feet. I wasn't looking at the track, but to see if anything was coming. I was looking up the track, but did not pay any attention to how far I could see up the track, and don't remember how far I could see up the track. I looked all the time from the time when we came within 75 feet of the track."

The argument is based in part, as we understand it,

on the thought that plaintiff was not looking at the track: that is, at the rails or track itself. But he was looking up the track for a train, etc. The plaintiff does not claim that he supposed defendant would comply with the ordinance, nor did he claim that he was excused from not looking because of the ordinance. It seems to us it was unnecessary to instruct that plaintiff would not be excused from looking, when he did not so claim. The jury was fully instructed as to plaintiff's duty in approaching the crossing.

3. Instruction No. 7 is complained of. This has reference to the duty of the defendant in regard to the speed of its trains, independent of any ordinance or statute; and the jury was told, in substance, that it was 3. TRIAL: con- not negligence in itself, in the absence of flicting in-structions. ordinance or statute fixing the rate of speed, to operate a train at any particular rate; and that, on the issue as to whether defendant was negligent in operating the train in question at a high and excessive rate of speed at the time of the accident, the burden was upon plaintiff to show, by a preponderance of the evidence, that ordinary care on the part of the defendant, in view of the surrounding circumstances, required that such train should have been operated at a slower speed. Plaintiff's testimony tended to show that the train was going at a rate of 18 to 20 miles an hour, and this instruction said no more than that, considering the obstructions and other circumstances, the jury should determine whether that rate of speed was negligent, under those circumstances. Instruction No. 8 instructed with reference to the city ordinance, and told the jury, in substance, that, if the train was operated at a greater rate of speed than 6 miles an hour, this would be negligence. Some of defendant's witnesses testify that the train was moving at something less than 6 miles an hour. These two instructions were given on two different issues: the first as to whether the rate of speed

shown was negligence; and second, whether a violation of the ordinance was negligence. The court, in preparing its instructions, cannot, of course, put them all in one instruction. We think there is no conflict in the two, and that the jury could not have been misled. Counsel concede that Instruction No. 7 is correct, as an abstract proposition, but they say there was no justification for giving it. This may be so, in a sense; because, if the train was being operated at a greater rate of speed than 6 miles an hour, and in violation of the ordinance, it would constitute negligence.

4. We have disposed of all questions argued, except the one sought to be raised by defendant in regard to the payment of statutory compensation. It is not claimed that plaintiff's injuries were the result of any joint wrong of the defendant and the transfer company, nor is it claimed that the transfer company was in any way to blame for or responsible for plaintiff's injuries.

4. MASTER AND SERVANT: Workmen's Compensation Act: subrogation against third party.

The compensation was paid solely because plaintiff was the employee of the transfer company. Plaintiff seeks to hold the defendant for its negligence, and to hold it liable for damages as a person other than the employer, under Section 2477-m6 of the Supplement to the Code, 1913. In the answer, defendant averred:

"That the Ware Transfer Company, by making payment of the sums due the plaintiff under the terms of the Workmen's Compensation Act, became subrogated to whatever right of action the plaintiff had against this defendant, on account of the injury so received, and by reason of such subrogation, the plaintiff is not entitled to maintain this action against the defendant."

5. MASTER AND SERVANT: Workmen's Compensation Act: employee's action against third parties.

Defendant's theory is, as we understand it, that the transfer company is completely subrogated to all the rights of the plaintiff, and that this has the force of an assignment of plaintiff's entire claim, and

that, therefore, plaintiff may not maintain this action, because the employer is substituted in the right of plaintiff to recover damages from the defendant. We think the $378 was not properly deducted, but that the employer is entitled to that much of the recovery from the defendant, notwithstanding the erroneous deduction. Appellant cites cases under the English act, to the effect that the receipt by plaintiff of the statutory compensation constitutes a recovery, even though the payments were made without the institution of litigious proceedings. This may be conceded to be the rule under our compensation act. Appellant cites English cases to the effect that, under the English act, which is, in some respects, quite different from the Iowa statute, plaintiff's right to recover damages from defendant was one indivisible right. They also cite, on this proposition, 1 Ruling Case Law 341, Par. 22, on the general doctrine against splitting causes of action. And the reason, or one reason, for this is that a party may not be harassed with a multiplicity of suits. But the next two sections in the same volume, pages 342 and 343, state that there are exceptions to this rule. One of these exceptions is that the rule is for the benefit of the defendant, and that he may agree to a splitting, or, if he does not agree, his conduct may be such as to require plaintiff to split a cause of action, to obtain complete justice. But we do not understand the authority just cited to have reference to the doctrine of subrogation. Defendant has not been subjected to any additional actions because the statute provides for subrogation, or because someone might ask it. In subrogation, there is no splitting of causes of action. Its object is the prevention of injustice, and rests upon principles of natural equity. 37 Cyc. 363; 25 Ruling Case Law 1311. The right of subrogation may be recognized at law, as well as in equity. 37 Cyc. 384. A party may be subrogated to all the rights of another, or subrogation may be granted *pro tanto*,

under some circumstances. Subrogation cannot take place by effect of law, beyond the amount actually disbursed under legal necessity. 37 Cyc. 381, 395; 25 Ruling Case Law 1388; *Houlihan v. Sulzberger,* infra. The right of subrogation is never allowed to one who would reap advantage in any way from his own wrongdoing, nor to relieve a party from the consequences of his own unlawful act, and will not be applied where its exercise would promote injustice. 37 Cyc. 371, 372.

Appellant also cites *McGarvey v. Independent Oil & G. Co.,* 156 Wis. 580 (146 N. W. 895), *Turnquist v. Hannon,* 219 Mass. 560 (107 N. E. 443), as holding that, plaintiff's right being an indivisible right, his entire cause of action passes to his employer by subrogation, upon the payment of compensation. But the statutes in those states are entirely different from ours. The Wisconsin statute provides, in part, that the making of a claim against an employer for compensation operates as an assignment of any cause of action in tort which the employee may have against any other party, and that the employer may enforce, in his own name, the liability of such other party, and that the making of a claim against a third party for damages shall operate as a waiver of any claim for compensation. Under the Massachusetts statute, the employee or his representative has the right of election to sue at law, or to sue for compensation, but may not proceed against both, and provides that, if compensation be paid under the act, the association may enforce, in the name of the employee, or in its own name, and for its own benefit, the liability of such other person. It was held that the liability created by the act for negligently causing the death of another is a penalty, and that the association, which compensates the widow, has a right of action against the person who negligently caused the death of the workmen, and that this right does not depend upon any theory of reimbursement or subroga-

tion, but is because the association is equitably entitled to
it. Under appellant's theory, that plaintiff's entire cause of
action passes to his employer, and only the employer can
sue to recover damages for the tort, it might work out in
this way: The Ware Transfer Company, plaintiff's employer, having paid $378 statutory compensation, could bring
suit and recover the full amount of the damages, which, in
this case, the jury fixed at over $7,000, thus greatly benefiting the employer; or, if the employer could only recover
from the defendant, as damages, such an amount as would
indemnify him, to wit, $378, then, and in that case, the defendant would be benefited in a large amount. This is not
the doctrine of subrogation. The employer, or the party
entitled to subrogation, stands in the shoes of the plaintiff,
and can be subrogated to no greater rights than the one in
whose place he is substituted. 37 Cyc. 380, 429.

A surety cannot speculate upon his principal's misfortune, his right being limited to actual repayment and indemnification. 37 Cyc. 430; 25 Ruling Case Law 1388, 1389.
And we have seen by a prior citation that the party guilty
of the tort may not reap a benefit. Possibly the employer,
having paid compensation, could be treated as an assignee
or trustee, and sue the wrongdoer and recover damages as
trustee for plaintiff for all over the amount of compensation paid. The statutes of some states have such a provision. Ours do not. At any rate, no such claim is made in
defendant's answer, if, indeed, it can raise such a question
at all; or if the employee refuses to sue, or there is collusion between the employee and the wrongdoer, possibly the
employee could sue to recover the amount sufficient to indemnify him, or, as trustee, for himself and employee; but
that is not this case, and no such question is presented. It
should be said, perhaps, in passing, that formerly the right
of subrogation was limited to transactions between prin-

cipals and sureties, but is no longer confined to cases of strict suretyship.  37 Cyc. 370, 373.

The amount of the recovery for tort might be in a greater amount than the compensation fixed by the statute, since there may be other elements of damage allowed in an action for tort, as, for instance, pain and suffering, etc.  It is true, as argued by appellant, that there may not be a double recovery by plaintiff by receiving compensation and recovering damages, in the sense that plaintiff may receive both for his own benefit.  But he recovers full compensation in the action for damages, but the employer is subrogated to the rights of plaintiff to the extent of the amount of compensation paid by the employer, if, as in the instant case, the compensation is less than the damages recovered.  He may recover both, but subject to the right of the employer to be indemnified for the amount paid.  This is doubtless one object of the statute, to prevent a double recovery; and another purpose is to provide indemnity to the employer, and allow him to be subrogated to that extent.  It may be that a proper construction of Subdivision a of the statute cited, is that the amount of the compensation is to be reduced by the amount of damages recovered, in a case where the damages recovered are less than the compensation.  In the instant case, compensation was much less than the damages, so that Paragraph b of the statute applies.  Under this last provision of the statute, the employer is entitled to be subrogated.  37 Cyc. 383, 387; 25 Ruling Case Law 1391, 1393.

The defendant may not plead or assert the right for the employer, in the manner attempted here, in the sense that all plaintiff's rights pass to the employer.  Our statute, Section 2477-m6, Code Supplement, 1913, provides:

"Where an employee coming under the provisions of this act receives an injury for which compensation is payable under this act and which injury was caused under cir-

cumstances creating a legal liability in some person other than the employer, to pay damages in respect thereof:

"(a) The employee or beneficiary may take proceedings both against that person to recover damages and against the employer for compensation, but the amount of the compensation to which he is entitled under this act shall be reduced by the amount af damages recovered.

"(b) If the employee or beneficiary in such case recovers compensation under this act, the employer by whom the compensation was paid or the party who has been called upon to pay the compensation, shall be entitled to indemnity from the person so liable to pay damages as aforesaid, and shall be subrogated to the rights of the employee to recover therefor."

Section 3 of the Illinois statute provides, in substance, that no common-law or statutory right to recover damages, other than compensation provided for by the compensation act, for injury received in the line of his duty, shall be available to the employee against his employer. Section 17 of the Illinois act reads:

"Sec. 17. Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person, other than the employer, to pay damages in respect thereof:

"(a) The employee or beneficiary may take proceedings both against that person to recover damages and against the employer for compensation, but the amount of the compensation which he is entitled to under this act shall be reduced by the amount of damages recovered.

"(b) If the employee or beneficiary has recovered compensation under this act, the employer by whom the compensation was paid or the person who has been called upon to pay the indemnity under sections 4 and 5 of this act, may be entitled to indemnity from the person so liable to

pay damages as aforesaid, and shall be subrogated to the
rights of the employee to recover damages therefor."

The Illinois statute and our own are quite similar.
Under the Illinois statute, the Supreme Court of that state
held, in *Houlihan v. Sulzberger*, 282 Ill. 76 (118 N. E. 429):

"Sections 3 and 17 must be construed together, and, in
spite of the provisions of Section 3, Section 17 recognizes
that an injury may be caused under circumstances creating
a legal liability in some person other than the employer, and
preserves the right of the employee to proceed against both.
Paragraph (a) provides that, in case of a recovery against
a person other than the employer, the compensation under
the act shall be reduced by the amount of the damages re-
covered. It does not provide that the amount of damages to
be recovered shall be affected by the amount of compensa-
tion under the act. Paragraph (b) provides that, if the
employee has recovered compensation, the employer may
be entitled to indemnity from the person liable to pay dam-
ages, and shall be subrogated to the rights of the employee
to recover damages. He is not entitled, however, to more
than indemnity out of the damages recovered, and the subro-
gation must be limited to that amount. The amount of the
recovery, however, is not so limited. The Workmen's Com-
pensation Act is not based upon the principle of the com-
mon-law action for negligence. It is based upon the prin-
ciple that the loss occasioned by accidental injuries in the
employments affected should be borne to the extent fixed
in the act by the employer; and beyond that, he is not
liable. Negligence of the employer or employee has noth-
ing to do with the question of compensation. This prin-
ciple is confined to cases between employer and employee
arising out of and in the course of the employment. The
act of 1911 did not extend its provisions beyond the em-
ployer and employee immediately concerned. It did not
take away from the employee the common-law liability to

him of a third person, but expressly preserved the right to proceed against such third person, as well as the employer, and such right was in no way limited; though, if there was a recovery of damages, the employer was entitled to indemnity out of them."

We think that decision is in point, and we are disposed to follow it. It answers some of the arguments advanced by appellant, in the instant case. The recent case of *Southern Surety Co. v. Chicago, St. P., M. & O. R. Co.*, 187 Iowa 357, was an action brought by an insurer of the employer to recover from the wrongdoer the amount it had paid for the employer. The action was brought after the injured employee had been paid his compensation, and after he had recovered and been paid his damages in an action against the wrongdoer. In the course of the opinion, Mr. Justice Gaynor said:

"It is apparent from the statute that, when Whitney received his injuries, he was entitled to proceed against his employer, under this act. * * * When an injury is received under circumstances rendering the employer liable to the injured party under the statute, nothing is left for the employer to do but to make compensation. This compensation is required to be made, though the employer is in no way negligent, and in no way liable at common law for damages. The compensation is purely statutory, and the amount of compensation is fixed by the statute. Its provisions are for the protection of the workingman, as between him and his employer, and in no way affects or controls the right of the injured party to proceed at common law against the actual wrongdoer. In an action at common law, the injured party is entitled to recover all that the common law recognizes as proper to be recovered in suits of that kind. This includes compensation for the injury, loss of time, medical care, and treatment, and all other injuries which are shown to flow as a proximate result of the wrong

done.  The fact that the injured party proceeded against his employer, and secured compensation under the act, cannot be pleaded by the wrongdoer when suit at common law is instituted against him.  He is liable for the full amount of the damage, regardless of any rights the injured party has against his employer, or may have had under the act. Nowhere in the act does it say that the amount of recovery against the actual wrongdoer shall be diminished, in any degree, by the fact that the injured party has received, or may receive, compensation for some of the wrong, through his employer, under the act.  The obligation of the wrongdoer is the same as if there were no Workmen's Compensation Act.  Compensation is one thing, and damages another. He recovers from the wrongdoer all the damages that he sustained by reason of its wrongful act.  He recovers only such compensation from his employer as is provided for in the statute."

This meets some of the arguments advanced by appellants.  It further holds that the third party, or the wrongdoer, may not plead the fact that the injured party proceeded against an employer and secured compensation under the Compensation Act, in an action for damages at common law against the wrongdoer.  He may not plead it as a defense, or, as here, to show, as defendant claims, full subrogation or assignment, though it is proper to call the court's attention to it, that the employer may be brought in.

We hold that appellant's contention that plaintiff cannot maintain the action cannot be sustained.  The statute does not provide how the employer's indemnity or subrogation shall be adjusted, whether by intervention after verdict in the action for damages, or during the trial, or whether it should be made a party defendant, or whether the wrongdoer may serve notice on employer before paying the judgment, or payment of money on settlement, if there is one, and so protect itself.  At any rate, where it appears

that compensation has been made under the Compensation Act, the employer should, in some way, be brought in. 37 Cyc. 388; 25 Ruling Case Law 1395.

We find no prejudicial error, and the judgment is, therefore, affirmed. Under the peculiar circumstances shown, the cause is remanded, with directions that the employer be brought in, to the end that any compensation which has been paid by him may be deducted from the judgment and paid to him, and the balance to plaintiff.— *Affirmed*.

LADD, C. J., GAYNOR and SALINGER, JJ., concur.