[S. F. No. 11020. In Bank.—July 8, 1924.]

KARL OFFER, Petitioner, .v. SUPERIOR COURT OF
THE STATE OF CALIFORNIA, IN AND FOR THE
CITY AND COUNTY OF SAN FRANCISCO et al.,
Respondents.

[1] SUBROGATION—SURETYSHIP—PAYMENT OF DEBT OF ANOTHER.—The
principle upon which the right of subrogation is founded applies
to cases of suretyship, but it is applied in all cases in which one
party pays a debt for which another is primarily answerable, and
which, in equity and good conscience, should have been discharged
by the latter.

[2] ID.—INSURANCE COMPANIES—NATURE OF RIGHT.—Insurance com-
panies are given the right of subrogation, which right of the in-
surer against the wrongdoer does not rest upon any relation of
contract or of privity between them, but arises out of the nature
of the contract of insurance as a contract of indemnity, and this
right arises independent of a provision in the contract of in-
surance which gives the insurer the right to recover damages from
the person responsible for the loss.

[3] ID.—MEASURE OF RECOVERY.—An insurer on paying the amount of
the loss on the property insured is subrogated only in a corre-
sponding amount to the insured's right of action against any
other person responsible for the loss.

[4] ID.—SPLITTING OF CAUSES OF ACTION—PARTIES—PLEADING.—While
to permit an insurer to sue the wrongdoer at law in cases where
the extent of the loss is not covered by the insurance policy
would result in splitting a cause of action sounding in tort and
thus subject the defendant to two suits upon a single cause of
action, this result may be avoided by joining the insured as a co-
plaintiff, or as a co-defendant if the insured refuses to join as
plaintiff, and if the plaintiff fails to do so, the defendant may
protect himself by pleading such defect of parties, either by
demurrer or by plea in abatement.

[5] ID.—DEFECT OF PARTIES—WAIVER.—If the wrongdoer in an ac-
tion against him by the insurer for the amount of damages covered
by the insurance does not demur or enter a plea in abatement
because of nonjoinder, the defect is waived and he might be held

1. See 25 R. C. L. 1322.

2. Insurer's right to subrogation, notes, 44 Am. St. Rep. 731; 16
Ann. Cas. 635. See, also, 14 Cal. Jur. 592; 14 R. C. L. 1404, 1408.

4. See 1 Cal. Jur. 369; 1 R. C. L. 341.

5. See 20 R. C. L. 712.

liable to the insured in another action for the amount of the loss not covered by the insurance policy.

[6] ID.—LEGAL RIGHT OF ACTION—ASSIGNMENT.—A court of law may deal with subrogation as it may with assignment, and when the right of action to which a plaintiff asks to be subrogated is a legal right of action, a court of law may treat a plaintiff who is entitled in equity to subrogation as an assignee and allow him to maintain an action of a legal nature upon the right to which he claims to be subrogated.

[7] ID.—INJURY TO PROPERTY—THING IN ACTION—ASSIGNABILITY.—A right of action for injury to an automobile caused by collision arises out of the violation of a right of property, and such right of action, or thing in action, is assignable under section 954 of the Civil Code.

[8] ID.—PARTIES—REAL PARTY IN INTEREST—ASSIGNMENT—PAYMENT OF CLAIM BY INSURANCE COMPANY—SECTION 367, CODE OF CIVIL PROCEDURE.—Section 367 of the Code of Civil Procedure, which provides that every action must be prosecuted in the name of the real party in interest, has the practical effect of removing all difficulties in the way of assignments in an action by an insurance company against the wrongdoer on a claim paid by the insurer, so that the act of the latter in paying the amount of the loss vests a complete ownership and right of action in it.

[9] ID.—LEGAL RIGHT OF ACTION—REMEDIES.—Such a right of action to which the insurer is subrogated being legal, that is, for the recovery of money for damages suffered, is enforceable at law.

[10] ID.—LAW AND EQUITY—FORUM.—In jurisdictions where there is a merger of law and equity and a single forum is theoretically capable of taking cognizance of all rights, both legal and equitable, a so-called equitable right may be enforced in a court of law.

[11] ACTION FOR DAMAGES — AUTOMOBILE COLLISION — ACTION BY INSURER—FORUM.—An action for damage to an automobile by collision, by a company which insured the owner against damage, is in essence a legal action and the defendant is entitled to have it tried in a court of law.

---

7. See 3 Cal. Jur. 240; 2 R. C. L. 610.
10. See 1 Cal. Jur. 312; 1 R. C. L. 333.

(1) 37 Cyc., p. 370.   (2) 32 C. J., p. 975, sec. 1; 33 C. J., p. 43, sec. 714.   (3) 33 C. J., p. 43, sec. 714 (1926 Anno.).   (4) 30 Cyc., pp. 115, 124; 31 Cyc., pp. 174, 293.   (5) 31 Cyc., p. 738.   (6) 37 Cyc., p. 385.   (7) 5 C. J., p. 889, sec. 55.   (8) 37 Cyc., p. 380. (9) 1 C. J., p. 1045, sec. 175.   (10) 1 C. J., p. 1048, sec. 176.

APPLICATION for a Writ of Prohibition to restrain the Superior Court from proceeding with a trial. Writ granted.

The facts are stated in the opinion of the court.

Horace W. B. Smith and P. R. Lund for Petitioner.

John Ralph Wilson and Charles B. Morris for Respondents.

LAWLOR, J.—This is an application for a writ of prohibition made by the attorney for and on behalf of the petitioner, the party beneficially interested, to restrain the superior court, in and for the city and county of San Francisco, and Honorable George H. Cabaniss, judge thereof, from proceeding to trial of an action for an amount less than $300, upon the grounds that the superior court has no jurisdiction in the premises and that the petitioner has no plain, speedy, or adequate remedy in the ordinary course of law. An order to show cause was ordered to issue.

It appears that the Maryland Casualty Company, a corporation, as plaintiff, commenced an action against Karl Offer, as defendant, in the superior court of the state of California, in and for the city and county of San Francisco, by filing a verified complaint to enforce the alleged liability of the said defendant amounting to the sum of $53.25 for damages caused to a certain automobile, the property of one R. C. Lamayson, to whom the plaintiff had theretofore issued a certain policy of insurance, commonly called collision insurance, whereby the plaintiff agreed to pay to said R. C. Lamayson any damages which he might sustain by reason of collision; and it was further agreed that if said automobile were damaged by collision through the fault of any third person that any amount recovered from such third person on account of said damages should be for the benefit of plaintiff and that plaintiff should have a right to sue for such damages and that in any action so brought the said R. C. Lamayson would assist plaintiff to recover. A demurrer to the complaint was overruled on the ground that although the complaint involved the recovery of a sum of money less than $300 the court nevertheless had jurisdic-

tion, and it is alleged that the trial will be proceeded with if the writ is not issued.

It is claimed in support of the application that the superior court is without jurisdiction (sec. 5, art. VI, Const.; sec. 112, Code Civ. Proc.) to entertain or further proceed in said action except to dismiss it for lack of jurisdiction.

Respondents claim jurisdiction upon the ground that section 76, subdivision 1, of the Code of Civil Procedure, and section 5, article VI, of the constitution, provide that the superior court shall have original jurisdiction in all cases in equity; that if a principle of equity is the foundation of the action the amount of money involved is not controlling; that the right of subrogation is applicable in a case of insurance, but that in the case at bar there was in fact *no complete subrogation, but only a right to the amount sued for when recovered.* It is apparent from respondents' brief that what is meant by ''no complete subrogation'' is that the right must first be judicially determined. In answer to the petitioner's claim that the right of subrogation has become cognizable in a court of law, especially when the right of action to which the party asks to be subrogated is a legal one, respondents claim that ''it cannot be said that the plaintiff is compelled to seek his remedy at law rather than in equity.''

Concerning the right of subrogation it is said in a note in 25 R. C. L. 1391: ''By the civil law a surety paying the debt is subrogated to the rights of the creditor, *ipso facto,* but in modern practice the true rule would seem to be that a surety by payment does not become *ipso facto* subrogated to the rights of the creditor, but only acquires a right to such subrogation, and that before the substitution or equitable assignment can actually take place he must actively assert his equitable right thereto. It is not a substantive tangible right of such nature and character that it can be seized and held and enjoyed independently of a judicial proceeding. It is a right in action only, that is, it must be established by a judicial proceeding. For this purpose resort must be had to a civil action. Strictly speaking, there are two distinct causes of action in such cases—one consists of those facts that show the right to be subrogated to the rights of the creditor in the securities held by the latter; the other consists of those facts which show that the

security may be enforced against the principal. In the natural order of precedence, the party must establish his right to be subrogated to the security before he can be permitted to enforce it.'' The note goes on to show that in every case the right to subrogation need not be first judicially determined, for if there is a statute providing for subrogation it is not necessary to the recognition of the right that there be a judicial determination thereof. (68 L. R. A. 574, 577, 587.)

[1] The principle upon which the right of subrogation is founded applies to cases of suretyship, but it is applied in all cases in which ''one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter.'' (Sheldon on Subrogation, p. 2.) [2] Thus insurance companies are given the right (Id., p. 333 et seq.). This right of the insurer against the wrongdoer does not rest upon any relation of contract or of privity between them, but arises out of the nature of the contract of insurance as a contract of indemnity. The right arises independent of a provision in the contract of insurance which gives the insurer the right to recover damages from the person responsible for the loss. (44 Am. St. Rep. 731–739.) [3] However, it is plain that the insurer on paying the amount of the loss on the property insured is subrogated only in a corresponding amount to the insured's right of action against any other person responsible for the loss (*Liverpool & Great Western Steam Co.* v. *Phenix Ins. Co.,* 129 U. S. 397 [32 L. Ed. 788, 9 Sup. Ct. Rep. 469, see, also, Rose's U. S. Notes] ; *Travelers' Ins. Co.* v. *Great Lakes Engineering Works Co.,* 184 Fed. 426 [36 L. R. A. (N. S.) 60, 107 C. C. A. 20] ). [4] It may be suggested that to permit the insurer to sue at law in cases where the extent of the loss is not covered by the insurance policy would result in splitting a cause of action sounding in tort and thus subject the defendant to two suits upon a single cause of action. It seems, however, that this result may be avoided by joining the insured as a coplaintiff (*Fairbanks* v. *San Francisco & N. P. Ry. Co.,* 115 Cal. 579 [47 Pac. 450] ), or as a codefendant if the insured refuses to join as plaintiff (*Liverpool etc. Ins. Co.* v. *Southern Pac. Co.,* 125 Cal. 434 [58 Pac. 55] ), and if the plaintiff fails to do so the defendant may protect

himself by pleading such defect of parties, either by demurrer or by plea in abatement. (See, also, note, Ann. Cas. 1918A, 835.) In *Powell* v. *Wake Water Co.*, 171 N. C. 290 [Ann. Cas. 1917A, 1302, 88 S. E. 426], cited in the note, the wrongdoer had settled the claim of the insured for damages over and above the amount of the insurance, which was paid to the insured by the insurers. The insurance companies then instituted a suit against the wrongdoer in their respective names for the amount of the insurance paid. In affirming the judgment it was held that the action was properly brought, the court saying: "If the insurance is less than the loss, and the insured has settled the difference between the insurance and the total loss with the wrongdoer, leaving unsettled only the amount of damages, measured by the insurance, the cause of action for this damage would be in the insurer, for the reason that the insured has parted with all beneficial interest in the right of action, and, while the cause of action was indivisible, it has been divided by the act of the parties." [5] It would seem to follow that if the wrongdoer in an action against him by the insurer for the amount of damages covered by the insurance does not demur or enter a plea in abatement because of nonjoinder, the defect is waived and he might be held liable to the insured in another action for the amount of the loss not covered by the insurance policy.

The development of subrogation is closely analogous to several other modes of remedy. The question often arises whether one who has suffered by being held liable for the tort or breach or contract of another should seek his remedy by an action founded on an express promise of indemnity, if such there was, or on the implied assumpsit raised by his payment of the obligation of the other, or upon the theory of subrogation. In some cases the claimant may have taken an assignment of the demand he has paid; he may have an express contract of indemnity, or an implied *assumpsit* to rest upon, and yet, perhaps, may have an election to proceed on the theory of subrogation, "which is a sort of assignment by operation of equity." This doctrine of subrogation having grown up out of the doctrine of assignment of causes of action it may be well to trace the progress of the latter.

Originally the common-law courts would not recognize an assignment of a right of action; the assignee had no standing in court, and the assignor could sue notwithstanding his assignment. Finally, the courts of equity began to recognize assignments and to enforce them as between the parties and as against the debtor. This equitable practice being firmly established, the courts of law, while theoretically respecting the old common-law doctrine that the assignment was void at law, employed the fiction of a suit by one to the use of the other and gave the assignee an adequate remedy at law. And it was not necessary to first establish the right to the assignment in a court of equity. At this stage, then, the courts of equity refused to entertain a bill brought by an assignee because he had an adequate remedy at law by suing in the assignor's name. That is the situation here. In modern practice, by the adoption of codes of procedure, the assignee is given the right to sue in his own name. The doctrine of subrogation has progressed in much the same way as the doctrine of assignment, but has not reached the same stage of development. At first, subrogation was purely an equitable remedy not to be claimed at law. But the courts of law gradually grew to sustain actions founded on the doctrine of subrogation in cases where the claim itself was cognizable at law. [6] The better view is that a court of law may deal with subrogation as it may with assignment, and when the right of action to which a plaintiff asks to be subrogated is a legal right of action a court of law may treat a plaintiff who is entitled in equity to subrogation as an assignee and allow him to maintain an action of a legal nature upon the right to which he claims to be subrogated. When the common law first adopted the doctrine of subrogation it was held that the party seeking subrogation could not sue at law in his own name—the action must have been maintained for his benefit in the name of the original claimant. In the practice under the codes of procedure, requiring that the real party in interest shall bring the action, the courts allow one claiming subrogation to a legal cause of action to sue at law in his own name. An assignee is allowed to sue in his own name on the same ground. Of course, if the cause of action to which he claims to be subrogated is an equitable one, he must sue in equity, and there can always sue in his

own name. (Note to *French* v. *Vix*, 30 Abb. N. C. 158–176; *Dunlop* v. *James*, 174 N. Y. 411 [67 N. E. 60].)

In *Boyd* v. *McDonough*, 39 How. Pr. (N. Y.) 389, it was said: "This right of subrogation is also recognized by courts of law." In *De Brauwere* v. *De Brauwere*, 69 Misc. Rep. 472 [126 N. Y. Supp. 221], the doctrine of subrogation was held to be cognizable at law, as well as in equity, if the recovery is of a sum of money only. In *Polhemus* v. *Prudential Realty Corp.*, 74 N. J. L. 570 [67 Atl. 303], it was held that although when the right of subrogation is in question the remedy is in equity, when the right itself is conceded, and there remains to be enforced only the right of realizing the value of the subject matter, such right may be within the cognizance of a court of law. (See, also, *Baker* v. *American Surety Co.*, 181 Iowa, 634 [159 N. W. 1044]; *Black* v. *Chicago, G. W. R. R. Co.*, 187 Iowa, 904 [174 N. W. 774].)

[7] Section 954 of the Civil Code provides that "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." It is clear that in the case at bar the cause of action of the insured arose out of the violation of a right of property and such right of action, or thing in action, is declared by the above code section to be assignable. In *Dibble* v. *San Joaquin L. & P. Corp.*, 47 Cal. App. 112, 117 [190 Pac. 198], the court held that the insurer merely had a cause of action arising by way of subrogation or equitable assignment which is declared to be an assignment by operation of law. If the right of the insured is assigned to the insurer by operation of law there is no necessity to go into equity to establish that right. [8] It is to be noted that section 367 of the Code of Civil Procedure, wherein it is provided that every action must be prosecuted in the name of the real party in interest, has the practical effect of removing all difficulties in the way of assignments, so that the act of the insurance company in paying the amount of the loss suffered by the collision vested a complete ownership and right of action in such insurance company. [9] The right of action to which the insurer was subrogated being legal, that is, for the recovery of money for damages suffered, it is enforceable at law. *Massachusetts Bonding & Ins. Co.* v. *San Francisco-Oakland Terminal Rys.*, 39 Cal. App.

388 [178 Pac. 974], involved a provision of the Workmen's
Compensation Act which authorizes the assignment of a right
of action for personal injuries or for death by providing
that a lawful claim for compensation against an employer
by an injured employee shall operate as a transfer to his
employer of the legal title to his claim for damages against
his tort-feasor, or to the latter's insurer paying such claim.
Answering the argument that the act rendered the right of
action acquired by the employer or insurer an equitable cause
of action as against the tort-feasor, the court held that when
the payment had been made the assignment of the em-
ployee's cause of action is consummated by "such subro-
gation" and that the right accruing to the insurance com-
pany is that of maintaining as the assignee of the employee
the same action which such employee could have maintained
against the tort-feasor had no such assignment been made.
The point is that the right of the insurance company was
treated merely as the assigned right of action, in spite of the
term "subrogated" in the act.

In considering the right of subrogation two theories must
be kept in view. One theory is that it is a right which
must be established by a proceeding in equity, or if there
is a statute which recognizes the right in any particular
class of claims and the right to which the party claiming
subrogation is a legal right, such right may be enforced
in a court of law. This theory regards the right as a
matter of substantive law (68 L. R. A., *supra*). The other
theory makes the enjoyment of the right depend upon the
remedy provided. **[10]** In New York and other jurisdic-
tions, as in this state, where there is a merger of law and
equity and a single forum is theoretically capable of taking
cognizance of all rights, both legal and equitable, a so-called
equitable right may be enforced in a court of law. In *King
v. Chase,* 159 Cal. 420 [115 Pac. 207], section 1639 of the
Code of Civil Procedure, giving the superior court au-
thority in probate to compel the rendering of an account
by the personal representative of the deceased executor,
was under consideration. In meeting the contention that
such authority was confined to equity, the court said: "Such
power when it did exist was based solely on the lack of any
statutory method of accomplishing the same end by proceed-
ing in probate. Now that this lack has been remedied the
foundation of the equity jurisdiction is gone." The mode of

procedure prescribed by section 367 of the Code of Civil Procedure and section 954 of the Civil Code is just as effective a mode as that prescribed by the Workmen's Compensation Act, above referred to, and the same result is reached without resort to an independent proceeding in equity (10 Cal. Jur. [Equity], secs. 1, 7–9).

[11]· The fact that the complaint prays that the court decree the insurance company to be subrogated to the rights of the insured does not determine the nature of the action. In essence the action against petitioner herein is a legal action and he is entitled to have such action tried in a court of law.

Let a writ of prohibition issue.   So ordered.

Richards, J., Lennon, J., Shenk, J., Seawell, J., Waste, J., and Myers, C. J., concurred.