(No. 11432.—Judgment affirmed.)

MARGARET HOULIHAN, Admx., Defendant in Error, *vs.*
THE SULZBERGER & SONS COMPANY, Plaintiff in Error.

*Opinion filed December 19, 1917—Rehearing denied Feb. 6, 1918.*

1. NEGLIGENCE—*when workman on building is not a trespasser
in making use of fire ladder to go to his work.* Where the owner
of a building contracts for work which requires access to the roof
of the building by the contractor's workmen, the fact that a work-
man makes use of a fire ladder, permanently attached to the build-
ing, as a means of access to his work instead of going up the stair-
way on the inside of the building will not render him a trespasser.

2. SAME—*whether a thorough inspection would have revealed
unsafe condition of fire ladder is question of fact.* Where a work-
man on a building is killed by a fall received by the pulling out of
one of the rungs of a defective fire ladder while mounting the lad-
der to go to his work, it is a question of fact whether a reasonably
thorough inspection of the ladder by the owner of the building
would have disclosed its unsafe condition.

3. SAME—*when defendant is not prejudiced by refusal of leave
to file pleas based on Workmen's Compensation act.* Where facts
averred in pleas setting up certain provisions of the Workmen's
Compensation act as a defense to an action for damages for per-
sonal injury are admissible under the general issue, and evidence
of such facts is introduced on the trial, the defendant is not preju-
diced by refusal of leave to file said pleas.

4. SAME—*apparatus bracing smoke-stack is a part thereof.* The
bands and guy wires used for bracing a large smoke-stack are a
part of the smoke-stack, and one engaged in the repair of such ap-
paratus is engaged in the repair of the smoke-stack.

5. SAME—*amount of recovery in action against third person is
not limited by section 17 of Workmen's Compensation act of 1911.*
The amount of recovery in an action for negligence against a third
person is not limited by section 17 of the Workmen's Compensation
act of 1911 but the amount of compensation to be paid by the em-
ployer must be reduced by the amount of the damages recovered,
and where compensation has been paid, the employer is entitled to
be indemnified out of the damages recovered.

6. SAME—*when third person is not liable as employer under sec-
tion 20 of Workmen's Compensation act of 1911.* A third person
who contracts for work to be done on his building and is sued for
damages for the death of an employee of the contractor is not liable

as employer, under section 20 of the Workmen's Compensation act of 1911, in not requiring the contractor to take out insurance as provided in said section, where the contractor has already voluntarily taken out such insurance.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. C. F. IRWIN, Judge, presiding.

MORITZ ROSENTHAL, HENRY H. KENNEDY, JOSEPH W. MOSES, JULIUS MOSES, WALTER BACHRACH, and S. SIDNEY STEIN, (HAMILTON MOSES, and HENRY JACKSON DARBY, of counsel,) for plaintiff in error.

JAMES C. McSHANE, for defendant in error.

MR. JUSTICE DUNN delivered the opinion of the court:

Margaret Houlihan, as administratrix of the estate of Frank A. Houlihan, her deceased husband, recovered a judgment for $6500 in the superior court of Cook county against the Sulzberger & Sons Company for negligently causing his death. The Appellate Court affirmed the judgment, and the record has been brought here by writ of *certiorari* for review.

Houlihan was killed on September 30, 1912, by falling from a ladder attached to a building of the plaintiff in error. He was an employee of the Hamler Boiler and Tank Works, a corporation which was employed by the plaintiff in error to repair an iron band which encircled a smoke-stack of the plaintiff in error. The smoke-stack was about one hundred and fifty feet high and six or eight feet in diameter. The band was about seventy-five feet above the roof of the power house, and to it were attached four guy wires, the other ends of which were attached to anchors upon different buildings of plaintiff in error. At the time of the accident which resulted in Houlihan's death the band had been repaired and two of the guy wires had been at-

tached to their anchors. A third wire was to be attached to an eye-bolt fastened to the north wall of the plaintiff in error's fertilizer building, which was a five-story building of fireproof brick and cement construction, about fifty feet high, having an inside measurement of twenty-three feet square. Inside the building were iron stairways extending from the ground floor to the fourth floor, a wooden stairway from the fourth floor to the fifth floor, and a stationary ladder from the fifth floor to the skylight in the roof, which was usually left open but had a cover which could be closed in case of rain. On the south side of the building, at the level of the second floor, was a roof extending out from the building about sixteen feet. From this roof to the top of the building was a permanent wooden fire ladder, painted red, the sides of which were of yellow pine two by six inches, fastened to the building with the broad side perpendicular to its walls. The rungs were one-inch oak strips two inches wide, mortised into the uprights, so that their ends were even with the outsides of the uprights and the two-inch faces were even with the outer faces of the uprights. One-inch oak strips two inches wide were fastened to the outer faces of the uprights over the rungs. The upper part of this ladder from which the deceased fell had been constructed about seven years prior to the accident. There was a shorter ladder from the ground to the roof, where this ladder started. Houlihan was going up the fire ladder, having been preceded by a fellow-workman who had reached the roof and being followed by another who was about fifteen feet up the ladder. The latter heard a cry, and looking up saw Houlihan falling over backward clear of the ladder and about ten feet from its top. No one saw Houlihan at the instant he started to fall. After the accident it was discovered that the second and third rungs from the top had pulled loose and the strips fastened to the outer faces of the uprights had been loosened for a distance of about fifteen feet from the top of the ladder. There was

evidence tending to show that the ends of the rungs which pulled loose were rotten, and that there was a hole in each end of one of the rungs through which the nail or screw had pulled.

It is urged that there was no evidence tending to prove negligence on the part of the plaintiff in error; that Houlihan was using the ladder for his own convenience, without any authority or invitation of the plaintiff in error to do so, and that the plaintiff in error having provided a safe interior means of access to the roof, Houlihan had no right to use the fire ladder. There was nothing in the contract between the plaintiff in error and the Hamler Boiler and Tank Works in regard to the means of access to the roof, and if there had been no means of access it may be conceded that the Hamler Works would have been obliged to provide such means. The work to be done, however, required that the workmen should obtain access to the roof, and where the owner of a building contracts for work which requires access to the building, and where there is already a permanent means of access provided for that purpose to the parts of the building where the workmen are required to be, they are not trespassers or mere licensees in making use of such means of access. If the deceased had gone up the stairways and ladder inside the building he could not reasonably be called a trespasser, and if he had been injured by reason of their defective condition the plaintiff in error would not have been relieved of liability. The fact that of two ways, apparently equally available, he chose the one that was more convenient does not change the rule. While the fire ladder was constructed primarily for use in case of fire, it was a legitimate use of it to obtain access to the roof for persons having occasion in the business of plaintiff in error to go there. The cases cited by the plaintiff in error are cases where the person injured was in some part of the premises to which the business he was employed in did not call him, or made use of an appliance or structure

for some use for which it was not intended or in some manner different from the usual way. The ladder was constructed to bear the weight of firemen carrying hose. The fact that it gave way under the weight of the deceased indicates that it was not properly constructed or had not been kept in a safe condition. The nails would not have pulled through the ends of the rungs and the strips on the outside of the uprights would not have pulled loose if the ladder had been in a proper and safe condition.

It is insisted, however, that the plaintiff in error was not guilty of a lack of ordinary care in endeavoring to keep the ladder in a safe condition. The evidence shows that the ladder was painted once a year, and that about two months before the accident it had been inspected and painted and that no defect had been discovered. The rotten condition of the ends of the rungs for a half inch to an inch from their ends, so that a nail could be pulled through and the ends crumbled with the fingers, as testified to by a witness, tended to show that the condition must have existed for a longer time than two months and could have been discovered by a thorough inspection. It is said that the ends of the rungs were covered by the strips on the outside of the ladder. This is true of the face of the rung, but the end of the rung where it was mortised to the upright reached clear through the upright and was flush with the side of the ladder. An inspection with a sharp or pointed instrument would have disclosed the condition of these ends. No such inspection was made. The painter who made the inspection relied wholly upon his jerking the rung with one hand and throwing his weight against it while he held to the upright with the other hand. To say the least, it was a question of fact whether a reasonably thorough inspection of an appliance of this character would not have disclosed its unsafe condition.

There was no error in denying the motion for a directed verdict and submitting the case to the jury.

It is insisted that there was a variance between the allegations and the proof. The declaration charged that the Hamler Boiler and Tank Works, under a contract with the plaintiff in error, was doing certain work "in and about the placing, alteration and repair of a certain large smoke-stack which then and there belonged to the defendant and extended a great distance above the roof of one of its said buildings, and in the doing of said work it then and there became necessary for the said Hamler Boiler and Tank Works to attach and fasten one end of a guy wire to said smoke-stack and to fasten and attach the other end of said guy wire to and upon the roof of one of defendant's said buildings." After verdict the plaintiff, by leave of the court, amended the declaration so that the part just quoted would read as follows: "In and about the placing or bracing or alteration and repair of a certain large smoke-stack which then and there belonged to the defendant and extended a great distance above the roof of one of its said buildings, and in the doing of said work it then and there became necessary for the said Hamler Boiler and Tank Works to attach and fasten one end of a guy wire to an iron band that encircled and was clamped to said smoke-stack and to fasten and attach the other end of said guy wire to an eyebolt or anchor which was attached to a wall that partially supported the roof of one of defendant's said buildings." The variance claimed to exist is that there was no evidence that the smoke-stack was either placed, altered or repaired by the Hamler Works, and that all that company did was to remove an iron band which was no part of the smoke-stack, repair one section of said band and replace the band; and that neither was there any evidence that the Hamler Works was engaged in bracing said smoke-stack. This argument is based upon the proposition that the iron band was not an essential part of the smoke-stack. The smoke-stack would perhaps have stood without the band and guy wires. The plaintiff in error, however, thought it essential to the

282 — 6

safety of the structure to have the stack braced, supported and protected by this means, and the band and wires were as much a part of the smoke-stack as an iron rod extending from one wall of a building to another, for the purpose of bracing them, would be a part of the building. The apparatus by which the smoke-stack was braced was a part of the smoke-stack, and when the Hamler Boiler and Tank Works was repairing the bracing it was repairing the smoke-stack.

To the amended declaration the plaintiff in error filed a plea of the Statute of Limitations, the amendment having been made more than two years after the death of the deceased. An objection is made to the action of the court in sustaining a demurrer to the plea, but from what has been said on the question of variance it is apparent that the amended declaration introduced no new cause of action.

The plaintiff in error offered to file two other pleas to the amended declaration, one of which averred that both Houlihan and the Hamler Boiler and Tank Works had accepted the provisions of the Workmen's Compensation act of 1911; that by reason of Houlihan's death his employer became liable to pay, did cause to be paid and was continuing to pay and cause to be paid in weekly installments, the compensation provided for by that act, and the plaintiff had elected to receive, and did receive and was continuing to receive in weekly installments, such compensation. The other plea set up that the work in which the Hamler Boiler and Tank Works and Houlihan were engaged was embraced in section 2 of the Workmen's Compensation act of 1911; that the plaintiff in error did not require the compensation provided for by that act to be insured by the Hamler Boiler and Tank Works to its employees engaged in doing work under its contract, and by reason of the statute the plaintiff in error became an employer under the act and jointly liable with the Hamler Boiler and Tank Works for the compensation provided in the act. The facts averred in these pleas, if they had constituted any defense, would have been ad-

missible under the general issue, and the plaintiff in error was not, therefore, prejudiced by the refusal of leave to file the pleas. In fact, the evidence to sustain them was introduced on the trial. The first plea mentioned is based upon section 3 of the Workmen's Compensation act of 1911, which is as follows:

"Sec. 3. No common law or statutory right to recover damages for injury or death sustained by any employee while engaged in the line of his duty as such employee other than the compensation herein provided shall be available to any employee who has accepted the provisions of this act or to anyone wholly or partially dependent upon him or legally responsible for his estate."

Section 17 provides for the continuance of the common law liability to recover damages for injury or death caused by a person other than the employer. It is as follows:

"Sec. 17. Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person, other than the employer, to pay damages in respect thereof—

"(a) The employee or beneficiary may take proceedings both against that person to recover damages and against the employer for compensation, but the amount of the compensation which he is entitled to under this act shall be reduced by the amount of damages recovered.

"(b) If the employee or beneficiary has recovered compensation under this act, the employer by whom the compensation was paid or the person who has been called upon to pay the indemnity under sections 4 and 5 of this act, may be entitled to indemnity from the person so liable to pay damages as aforesaid, and shall be subrogated to the rights of the employee to recover damages therefor."

Sections 3 and 17 must be construed together, and, in spite of the provisions of section 3, section 17 recognizes that an injury may be caused under circumstances creating a legal liability in some person other than the employer and

preserves the right of the employee to proceed against both. Paragraph (*a*) provides that in case of a recovery against a person other than the employer the compensation under the act shall be reduced by the amount of the damages recovered. It does not provide that the amount of damages to be recovered shall be affected by the amount of compensation under the act. Paragraph (*b*) provides that if the employee has recovered compensation the employer may be entitled to indemnity from the person liable to pay damages and shall be subrogated to the rights of the employee to recover damages. He is not entitled, however, to more than indemnity out of the damages recovered and the subrogation must be limited to that amount. The amount of the recovery, however, is not so limited. The Workmen's Compensation act is not based upon the principle of the common law action for negligence. It is based upon the principle that the loss occasioned by accidental injuries in the employments affected should be borne to the extent fixed in the act by the employer, and beyond that he is not liable. Negligence of the employer or employee has nothing to do with the question of compensation. This principle is confined to cases between employer and employee arising out of and in the course of the employment. The act of 1911 did not extend its provisions beyond the employer and employee immediately concerned. It did not take away from the employee the common law liability to him of a third person but expressly preserved the right to proceed against such third person as well as the employer, and such right was in no way limited, though if there was a recovery of damages the employer was entitled to indemnity out of them.

The defendant introduced a policy of insurance effective July 12, 1912, issued by the Employer's Liability Assurance Corporation to the Hamler Boiler and Tank Works to cover its liability under the Workmen's Compensation act, and showed that this insurance company had paid, and was then paying for the Hamler Boiler and Tank Works, to the de-

fendant in error the indemnity provided by the act.   Since the Hamler Boiler and Tank Works had already voluntarily complied with the provisions of section 20 by taking out the insurance required, there was no default on the part of the plaintiff in error in failing to require what had already been done and no liability by it, as employer, under that section.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*