Jones, J.
This case is an exemplification of our recent holding in Pittsburg Coal Co. v. Industrial Commission, ante, 185, 140 N. E., 684, which accords to the employer under the Workmen’s Compensation Act an adequate remedy by due course of law whereby he may contest all jurisdictional facts necessary to be determined by the Commission before making an award in a suit brought against the employer for the amount of the award under Section 1465-74, General Code. Here the suit was brought by the state against the employers, present plaintiffs in error. The employers are defending and contesting two jurisdictional questions: First, the determination of the issue whether Harris was their employe or the employe of the independent contractor; and, second, if an employe of the independent contractor, whether a statute would be constitutionally valid which made him also the employe of the plaintiffs in error, thereby making the latter responsible for his injuries under the Workmen’s Compensation Act.
Since the jury, under the direction of the court returned a verdict for the defendants on the first *519 cause of action, they must have found that the decedent, in fact, was not an employe of the defendants at the time he was injured. This brings us to a consideration of the sufficiency of the second cause of action in the second amended petition, which the trial court withdrew from the jury.
In considering the demurrer to the second cause of action, we have the following facts conceded: That the De Witts were employers of five or more workmen regularly in their business; that Watson, the independent contractor, was also an employer of five or more workmen regularly; that the De Witts were not subscribers to the state insurance fund; and that both the De Witts and the independent contractor, Watson, had failed either to pay compensation into the state insurance fund or to elect to compensate their injured and killed employes direct. In this situation, at the threshold of this case, we are again met with the construction of Section 1465-61, General Code. Construing paragraph 3 of above section, this court recently held in Industrial Commission v. Everett, ante, 369, 140 N. E., 767, that an employe of an independent contractor, employing less than five workmen regularly, cannot be considered as the employe of a person who enters into a contract with such independent contractor. This case, however, takes a different angle. Here it is conceded by the demurrer that both the De Witts and the independent contractor employed five or more men regularly in their business and that neither had complied with the provisions of the Workmen’s Compensation Act. The case, therefore, again involves the construction of Section 1465-61(3), General Code.
*520 Simply stated, the question is, Does the employe of an independent contractor employing five or more workmen regularly, who has failed to comply with the Workmen’s Compensation Act, become the employe of the principal (here the De Witts, also employing five or more workmen) who entered into the contract with such independent contractor?
In considering the foregoing provision of the act we must construe the act in its entirety. Section 1465-60(2), General Code, specifically defines “employers,” within the meaning of the act, as persons employing five or more workmen regularly in the same business. Section 1465-61(2), General Code, specifically defines “employes” as persons in the service of an employer employing five or more workmen regularly in the same business. These were the provisions of the Workmen’s Compensation Act until amendment in 107 Ohio Laws, 159, and later reenactment in 108 Ohio Laws, pt. 1, 316. Prior to the amendment by the inclusion of paragraph 3 in Section 1465-61, General Code, there undoubtedly was no liability upon the part of an employer for damages resulting from injuries to the employe of an independent contractor. Were the provisions of the act at the time of this injury the same as they existed prior to the inclusion of paragraph 3, in 1917, it is clear that the second cause of action would not stand; but in 1917 the Workmen’s Compensation Act was amended by adding paragraph 3 to Section 1465-61, as follows:
‘ ‘ 3. Every person in the service of any independent contractor or subcontractor who has failed to pay into the state insurance fund the amount of premium determined and fixed by the Industrial *521 Commission of OMo for Ms employment or occupation, or to elect to pay compensation direct to Ms injured and to the dependents of his killed employes, as provided in Section 1465-69, General Code, shall be considered as the employe of the person who has entered into a contract, whether written or verbal, with such independent contractor uMess such employes, or their legal representatives or beneficiaries elect, after injury or death, to regard such independent contractor as the employer.”
Sections 1465-60 and 1465-61, General Code, are in pari materia, and must be construed together. When thus construed it is very clear that paragraph 3, aforesaid, did, in unambiguous terms, make the person who contracted with the independent contractor the employer of the employe of the independent contractor. However, under our construction of the entire act, in order to come within its provisions, such employer must have been one who had five or more workmen employed regularly in his business. In view of the express language and import of the paragraph under consideration, we must necessarily give it the construction here adopted, otherwise the entire paragraph would be nugatory and have no effect whatever.
We therefore hold that a person, himself employing five or more workmen regularly, is considered as the employer of the employe of an independent contractor within the meaning of Section 1465-61(3), General Code, where the latter also employs five or more workmen regularly and has failed to pay into the fund or to pay compensation direct, unless such employe or his legal representative or benefi *522 ciary has elected, after injury or death, to regard the independent contractor as the employer.
Plaintiffs in error contend, however, that if this construction be given to the paragraph in question, the paragraph should be declared unconstitutional, especially in view of the burdens and penalties imposed upon the original contractor under the Workmen’s Compensation Act. In Ohio we have a special constitutional provision relating to this subject. Section 35, Art. II, provides that—
“For the purpose of providing compensation to workmen and their dependents, for death, injury or occupational disease, occasioned in the course of such workmen’s employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom,” etc.
This provision is very wide in its scope, and has for its main purpose the compensation of workmen and their dependents for injury occasioned in the course of such workmen’s employment; but it is urged that the employe of an independent contractor is not the employe of a person who enters into a contract with him. In its strict sense this may perhaps be true, but it must be remembered that in one sense the employe of an independent contractor may be considered as working in the business of and for the benefit of the owner. Taking the whole scope and purpose of the constitutional provision, therefore, this court is unable to say that the Legislature lacks power under such a provision to classify and define an employe of an independent con *523 tractor as an employe of the person entering into a contract with such independent contractor. No doubt the purpose of the act, especially the paragraph in question, was to preserve the rights of an employe of an independent contractor who had failed to comply with the provisions of the Workmen’s Compensation Act, and to place the responsibility of seeing to its compliance upon the one who entered into a contract with the independent contractor. While this particular feature of the question was not presented in argument, it was later mooted, and counsel asked permission to prepare a brief upon the question. However, no authorities particularly applicable were cited upon this phase of the statute. The authorities generally agree that under ordinary compensation acts the principal contractor is not liable for injuries to the employes of his independent contractor. However in such cases no statutes are involved. Here the Legislature has stepped in and placed this liability upon the principal contractor, and, so far as we can find, the authorities uphold such legislative power, although it must be conceded that this feature was neither discussed nor directly presented in the cases hereinafter named, wherein Workmen’s .Compensation Acts were construed. Butler Street Foundry & Iron Co. v. Industrial Board of Illinois, 277 Ill., 70, 115 N. E., 122; Houlihan, Admx., v. Sulzberger & Sons Co., 282 Ill., 76, 118 N. E., 429, and Wausau Lumber Co. v. Industrial Commission, 166 Wis., 204, 164 N. W., 836.
In the last case the question arose under the Wisconsin statute, which provides as follows:
“Joint Liability of Employer and Contraotors. *524 Section 2394-6. An employer subject to the provisions of Sections 2394-3 * * * shall be liable for compensation to an employe of a contractor or subcontractor under him * * * who * * * has not complied with the conditions of Subsection 2 of Section 2394-24 in any case where such employer would have been liable for compensation if such employe had been working directly for such employer.”
The principal feature argued in that case was whether a subcontract made on Sunday was void. The Supreme Court of Wisconsin held that if it were void it did not “relieve the employer of the principal contractor from liability” for injuries to an employe of the subcontractor. In the last paragraph of the opinion of the court this appears:
“If a person, who is a subcontractor, employs another in respect to the work which is the subject of the contract, the rights of the employe under the Workmen’s Compensation Law are not affected by an invalidity of the subcontract. The statute expressly makes the principal liable, in specified circumstances, for injuries to employes of a subcontractor. ’ ’
In the Butler case, supra, the Illinois statute is not given in the report. However, the Supreme Court held that under the Illinois Workmen’s Compensation Act it became the “duty of the principal contractor to see to it that his subcontractor insures his liability to pay the compensation provided by the act or become liable himself to pay such compensation for injuries to the subcontractor’s employes.”
There is no distinction in principle between the *525 Wisconsin and Illinois statutes and our own in this respect.
We are of the opinion that under the provisions of Section 35, Art. II, of our Constitution, the Legislature had ample power to enact paragraph 3 of Section 1465-61, General Code, classifying and defining employes of an independent contractor as employes of the principal contractor, and that such paragraph is a valid, constitutional law.
Another constitutional question is also presented by this record. Counsel for plaintiffs in error allege that Section 1465-74, General Code, especially the provision therein contained imposing an added penalty of 50 per cent, of the amount of the award made by the Commission, is unconstitutional, in that it violates Section 16, Art. I, of the state Constitution, and Section 1, Art. XIV, of the Amendments of the federal Constitution. The claim is specifically made that the imposition of the 50 per cent, penalty is violative of the equal protection and due process clauses of the state and federal Constitutions. So far as it may be germane here, Section 1465-74, General Code, being Section 27 of the Workmen’s Compensation Act, provides, in substance, that an injured employe, whose employer has failed to comply with the act, or his dependents, may, in lieu of a civil action, file his application for compensation. The section then provides:
“And the amount of the compensation which said board may ascertain and determine to be due to such injured employe, or to his dependents in case death has ensued, shall be paid by such employer to the person entitled thereto within ten days after receiving notice of the amount thereof as fixed and de *526 termined by the board; and in the event of the failure, neglect or refusal of the employer to pay such compensation to the person entitled thereto, within said period of ten days, the same shall constitute a liquidated claim for damages against such employer in the amount so ascertained and fixed by the board, which with cm added penalty of fifty per centum, may he recovered in an action in the name of the state for the benefit of the person or persons entitled to the same.”
In the case at bar recovery was sought for $4,992, plus a penalty of 50 per cent., amounting to $2,496. In but one other state have we been cited a similar provision, and that is contained in Section 26 of the .New York act, passed December 16, 1913 (Laws 1913, c. 816), where the penalty recovered is required to be paid into the state treasury and applied to the expenses of the Commission. No court decision, however, has been cited passing upon the constitutionality of a similar penalty. So far as we know, therefore, we must blaze the trail touching this constitutional phase.
Where an appeal is taken by the employe after the denial of compensation, Section 1465-90, General Code, permits the inclusion of a reasonable attorney fee to the claimant, as costs taxed against the unsuccessful party, and if the Ohio statute authorizes the allowance as penalty of a reasonable attorney fee and expenses to the claimant, especially in the successful contest of his claim, we would hesitate to hold that the due process clauses of the state and federal Constitutions are denied, for the reason that the evident purpose of the statute is to require the defendant to reimburse the claimant for expenses *527 incurred as costs of suit. This is substantially the holding in Mo., K. & T. Ry. Co. v. Cade, 233 U. S., 642, 651, 34 Sup. Ct., 678, 58 L. Ed., 1135. But such is not the case involved here. The Ohio act peremptorily fixes the amount of the award as liquidated damages, with an equally peremptory provision that if the same is not paid within 10 days an added penalty of 50 per cent, shall be recovered. There is no doubt that the 50 per cent, is a penalty pure and simple. The statute so denominates it, and the state concedes it in argument. The point we have to consider is whether, in view of this and other provisions of the act, the added 50 per cent, constitutes so large a penalty as to amount to a deterrent upon an employer who seeks to attack the validity of the claim by due process of law in a judicial proceeding. This court has already indicated that the Industrial Commission is an administrative board, and though possessing quasi-judicial functions, is not a court within the meaning of our state Constitution. Fassig v. State, ex rel. Turner, Atty. Gen., 95 Ohio St., 232, 244, 116 N. E., 104; State, ex rel. Yaple, v. Creamer, Treas., 85 Ohio St., 349, 400, 97 N. E., 602, 39 L. R. A. (N. S.), 694.
Now what are the penalties imposed upon the employer who does not comply with the act? Section 1465-90, General Code, in express terms, provides that the determination of the Commission shall be final, except where the claimant is denied the right to participate on some ground going to the basis of the claimant’s right, in which event the claimant has the right of appeal to the common pleas court, but the section gives no appeal to the employer touching the same ground resting upon claimant’s right, al *528 though this court has held that the employer has his remedy in that respect when sued for recovery of the award. Furthermore, Section 1465-690-, General Code, makes it a misdemeanor for the employer to fail to comply with, the provisions of the act. In this case there is a failure either to contribute to the fund or to become self-insured under the act. An - other penalty equally, if not more severe, applying to causes originating after August, 1921, is that found in the recent amendment of Section 1465-69 on April 28, 1921 (109 O. L., 291, 293), which permits the Commission to “revoke the right of such employer to pay compensation direct, if in its judgment such action is necessary or desirable to secure or assure a strict compliance with all the provisions of the law in reference to the payment of compensation. * *
While this particular penalty in the instant case may not be made retroactive, the injury having occurred prior to the law becoming effective, it will apply to cases arising after the effective date of the amendment. These are the penalties, in addition to the 50 per cent, penalty, which the employer must face if he undertakes the risk of contesting the validity of the law or the jurisdictional facts under which an award is made. The employer may desire to contest these questions, but is confronted with the fact that he must pay the award within 10 days or assume the risk of being compelled to pay, in addition, not a reasonable attorney fee, but an amount equivalent to 50 per cent, of the death claim, should the decision of the court be adverse to him. Can this be said to be due process of law? Has he, under the Ohio act, the equal protection of the law? *529 The 50 per cent, penalty does not purport to be imposed because of any added expense to which any one may be put, and for which one may be reimbursed, and, being imposed in such a large amount, necessarily tends to intimidate an employer into compliance with the orders of a purely administrative body. It deters him from attacking the constitutionality or validity of a law, although the attack may be made in the utmost good faith. Take, this case as a concrete example. Plaintiffs in error throughout maintained that the two paragraphs under consideration were unconstitutional. They denied, first, legislative power under our Constitution to make employes of independent contractors the employes of the principal contractor, and, second, legislative power to impose a penalty of 50 per cent., in addition to the amount of the award, against an employer who attacks in good faith the validity of such provision.
The following is taken from the text in 12 Corpus Juris, 1241:
“Even though it authorizes an appeal to the courts, a statute is void if it imposes such severe penalties in the event the court decides against the appellant as to mate it hazardous to resort to the courts to test the validity of the act. ’ ’
In support of this text the case of Wadley Southern Ry. Co. v. Georgia, 235 U. S., 651, 35 Sup. Ct., 214, 59 L. Ed., 405, is cited, decided by the United States Supreme Court, and to which reference will later be made.
In Cotting v. Kansas City Stock Yards Co., 183 U. S., 79, at page 101, 22 Sup. Ct., 30, at page 39 (46 *530 L. Ed., 92), Mr. Justice Brewer, after citing concrete examples of the lack of due process, said:
“They serve only to illustrate the proposition that a statute (although in terms opening the doors of the courts to a particular litigant) which places upon him as a penalty for a failure to make good his claim or defense a burden so great as to practically intimidate him from asserting that which he believes to be his rights is, when no such penalty is inflicted upon others, tantamount to a denial of the equal protection of the laws. * * * But when the Legislature, in an effort to prevent any inquiry of the validity of a particular statute, so burdens any challenge thereof in the courts, that the party affected is necessarily constrained to submit rather than take the chances of the penalties imposed, then it becomes a serious question whether the party is not deprived of the equal protection of the laws."
In Ex parte Young, 209 U. S., 123, 28 Sup. Ct., 441, 52 L. Ed., 714, 13 L. R. A. (N. S.), 932, 14 Ann. Cas., 764, Mr. Justice Peckham, speaking for the court, approvingly cited the language of Mr. Justice Brewer in the former case, and, on page 147 of 203 U. S., on page 448 of 28 Sup. Ct. (52 L. Ed., 714, 13 L. R. A. [N. S.], 932, 14 Ann. Cas., 764), added:
“A law which indirectly accomplishes a like result [making the decision of the Commission conclusive as to the sufficiency of the rates] by imposing such conditions upon the right to appeal for judicial relief as works an abandonment of the right rather than face the conditions upon which it is offered or may be obtained, is also unconstitutional."
The latest pertinent pronouncement upon this subject in the United States Supreme Court was made *531 by Mr. Justice Lamar in Wadley Southern Ry. Co. v. Georgia, 235 U. S., 651, on page 661, 35 Sup. Ct., 214, on page 218 (59 L. Ed., 405), where the learned Justice said:
“But in whatever method enforced, the right to a judicial review must be substantial, adequate and safely available—but that right is merely nominal and illusory if the party to be affected can appeal to the courts only at the risk of having to pay penalties so great that it is better to yield to orders of uncertain legality rather than to ask for the protection of the law.”
Further on, after the citation of cases, he added:
“These eases do not proceed upon the idea that there is any want of power to prescribe penalties heavy enough to compel obedience to administrative orders, but they are all based upon the fundamental proposition that under the Constitution penalties cannot be collected if they operate to deter an interested party from testing the validity of legislative rates or orders legislative in their nature. * * * Liability to a penalty for violation of such orders, before their validity has been determined, would put the party affected in a position where he himself must at his own risk pass upon the question. He must either obey what may finally be held to be a void order, or disobey what may ultimately be held to be a lawful order.”
In the present instance the defendants not only desired to test, in court, the validity of the act, but they denied they were amenable to its provisions, for the reason that they were not employers of five or more workmen. If amenable to the act, an employer might desire to prove that the accident did *532 not arise ont of the course of employment. The statute charges a fixed penalty of 50 per cent., amounting in this instance to $2,496, in addition to the amount of the award. If the award be not paid within ten days after receiving notice of the amount thereof, the employer is confronted with the risk of being compelled to pay, not only the amount of the award, but 50 per cent, penalty additional, should he seek the judgment of a judicial tribunal and ultimately lose. Bather than incur risk of so great a penalty he would naturally be inclined to pay the award.
It is urged that this court has, in the case of Fassig v. State, supra, held the 50 per cent, penalty clause to be constitutional; that if it has not done so directly it has done so inferentially. The third clause of the syllabus in that case holds that “the provisions of Section 27 of the Workmen’s Compensation Act (103 O. L., 72, 82), constitute a valid exercise of the legislative power. ’ ’ But it must be noted that the “provisions” referred to in that clause of the syllabus, and specifically decided by them, related to the claims of a constitutional right to a jury trial and to the infringement on the judicial power of the state by conferring judicial functions upon an administrative board. These were the only “provisions” of the act construed by the court or discussed by the judge rendering the opinion. It is mere sophistry to claim that, in that case, this court dealt specifically with the present question; that is, whether the 50 per cent, penalty incorporated in Section 27 (Section 1465-74, G-eneral Code), was unconstitutional in its operation. Judge Johnson did not discuss that phase of the act, nor did he cite a *533 single authority touching it. Moreover, the judgment pronounced in that case by this court did not necessarily require a treatment of the 50 per cent, penalty, for the reason that the common pleas court had denied any recovery, even to the amount of the award; and the judgment of this court merely affirmed the judgment of the Court of Appeals, which had held that the employer in that case was not entitled to a judgment on the pleadings. The only reference Judge Johnson made in his opinion to the 50 per cent, penalty clause was the quotation of the act wherein that clause appeared. In the Fassig case it was not necessary to pass upon the question, although it may be conceded that counsel did raise the point in argument in order to obtain the court’s view upon a mooted question.
Five members of this court, viz., Marshall, C. J., Robinson, Jones, Matthias and Day, JJ., therefore hold that the clause contained in Section 1465-74, General Code, imposing a 50 per cent, penalty in addition to the statutory award, tends to compel obedience to the administrative orders of the Commission and operates as a deterrent upon an employer who may desire, in good faith, to test the validity of such orders, and, to that extent, transcends legislative power and violates the equal protection and due process clauses of the state and federal Constitutions. However, it would not be necessary to hold entire Section 1465-74 void, although the Attorney General insists that one provision of the section may not be stricken therefrom without destroying the law. In an Ohio case, decided by the United States Supreme Court, Loeb v. Columbia Township Trustees, 179 U. S., 472, 21 Sup. Ct., 174, 45 L. Ed., 280, *534 Mr. Justice Harlan adopted the principle announced in Treasurer of Fayette Co. v. Bank, 47 Ohio St., 503, 25 N. E., 697, 10 L. R. A., 196, wherein it is stated in the syllabus:
“One part of a section of a statute may be void for want of conformity to the Constitution, without affecting the validity of the remainder, unless the objectionable and unobjectionable portions are essentially and inseparably connected in substance, or are so interdependent that the General Assembly would not have enacted the one without the other. ’ ’
This has been the repeated expression of this court, and has been sustained in the following eases by the Supreme Court of the United States: Willcox v. Consolidated Gas Co., 212 U. S., 19, 54, 29 Sup. Ct., 192, 53 L. Ed., 382, 48 L. R. A. (N. S.), 1134, 15 Ann. Cas., 1034; Reagan v. Farmers’ Loan & Trust Co., 154 U. S., 362, 395, 14 Sup. Ct., 1047, 38 L. Ed., 1014; and Ohio River & Western Ry. Co. v. Dittey (an Ohio case), 232 U. S., 576, 594, 34 Sup. Ct., 372, 58 L. Ed., 737.
The legislative intention in this connection is expressed in the following provision of our Workmen’s Compensation Act (Section 1465-106, General Code) which reads:
“Should any section or provision of this act be decided by the courts to be unconstitutional or invalid, the same shall not affect the validity of the act as a whole or any part thereof other than the part so decided to be unconstitutional.”
The trial court withdrew the second cause of action from the consideration of the jury. The demurrer of the defendants to the second cause of action, conceding the facts therein pleaded, should *535 have been overruled, as it appears therein that both the principal and the independent contractor employed five or more workmen regularly, and were amenable to the act, while neither had complied with the provisions thereof. But, in view of the fact that the answer of the defendants denied that either the principal or independent contractor employed five or more workmen, thus not coming within the provisions of the act, the judgment of the Court of Appeals reversing and remanding the cause to the trial court will be affirmed, and the cause remanded to the latter court, for further proceedings in accordance with this opinion.

Judgment affirmed.

Marshall, C. J., Wanamaker, Robinson, Jones, Matthias, Day and Allen, JJ., concur in propositions 1 and 2 of the syllabus.
Wanamaker and Allen, JJ., being of opinion that Section 1465-74, General Code, is constitutional, concur in proposition 3 of the syllabus, which proposition is the law of the case under Section 2, Art. IV, of the Ohio Constitution.
Marshall, C. J., Robinson, Jones, Matthias and Day, JJ., dissent from proposition 3 of the syllabus.
Allen, J.
The sole question presented for determination in this opinion is whether that portion of Section 1465-74, General Code, which imposes a penalty of 50 per cent, upon an employer who has failed to comply with the act, and later fails to pay *536 an award made by tbe Industrial Commission pursuant to the provisions of tbe above section of tbe statute, is unconstitutional, upon the ground that it violates Section 1, Art. XIV, of tbe Amendments to the federal Constitution, and Section 16, Art. I, of tbe state Constitution.
The defendants below, whom we shall call tbe defendants throughout this opinion, here urge that, if tbe 50 per cent, penalty is imposed, tbe equal protection and due process clauses of tbe state and federal Constitutions will be violated.
Grant De Witt and Jack De Witt, defendants, in their answer to tbe second amended petition, admit that on or about tbe 27th day of November, 1918, when tbe accident in question occurred, the decedent was in tbe service of Albert Watson under a contract of hire. Tbe record contains evidence tending to show that Watson was an independent contractor, employing five or more workmen, who had failed to comply with tbe Workmen’s Compensation Act, and who bad entered into a contract with tbe De Witts to operate a baler furnished by the De Witts, upon which baler Harris was injured.
This court holds in another branch of this same case:
“1. A person, himself employing five or more workmen regularly, is considered as the employer of the employe of an independent contractor within the meaning of paragraph 3 of Section 1465-61, General Code, where the latter also employs five or more workmen regularly and has failed to pay into the fund, or to pay compensation direct, unless such employe or his legal representative or beneficiary *537 has elected, after injury or death, to regard the independent contractor as the employer,”
For the purposes of this case, therefore, Harris is to be considered the employe of the De Witts.
Section 1465-74 of the General Code provides that an injured employe, whose employer has failed to comply with the act, or his dependents may file application for compensation in place of filing a civil action.
In such event the section provides that the amount of' compensation awarded by the Industrial Commission shall be paid by the employer to the person entitled thereto, within 10 days after the employer receives notice of the amount fixed by the Commission, and that, in case of failure, neglect, or refusal of the employer to pay such award to the person entitled thereto within ten days, the same shall constitute a liquidated claim for damages against the employer and that an added penalty of 50 per cent, may be recovered in an action brought for the benefit of the person or persons entitled thereto in the name of the state.
This feature of the law is attacked as being unconstitutional. Two members of the court hold it to be constitutional for the following reasons:
First. That the constitutionality of this section of the act is presumed, and its invalidity does not clearly appear.
Second. That that feature of the section which provides no appeal for the employer from the award of the Commission has been held to be constitutional; and that feature of the act which provides no appeal for the employer is even more drastic in *538 keeping the employer from resorting to the court than that which imposes the 50 per cent, penalty.
Third. That the employer who fails to cpmply with the act has waived his right to question its constitutionality. If he chooses not to bear the burdens of the Workmen’s Compensation Law he must assume the penalties which the act imposes upon those in his class.
Fourth. That this court has already upheld the constitutionality of this same provision of the law.
The provisions of the state and federal Constitutions which are urged to be contrary to this 50 per cent, penalty measure are as follows:
“No state shall * * * deprive any person of life, liberty or property, without due process of law ; nor deny to any person within its jurisdiction the equal protection of the laws.” Amend. Art. XIV, Section 1, United States Constitution.
“All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.” Article I, Section 16, Ohio Constitution.
It is vigorously argued by the defendants that the imposition of the 50 per cent, penalty deprives the employer of his day in court: that the employer will hesitate to come into court to attack the validity of the law or to question the validity of the proceedings in the case, because of the heavy penalty which is imposed for noncompliance with the award; and that thus he is deprived of the equal protection of the laws.
In answer to this contention, it is not necessary to argue our first proposition which is that the validity of this statute is presumed.
*539 Turning, therefore, to the second ground for upholding this section, we note that those who attack the 50 per cent, penalty do not attack the fact that under this same provision the employer who has not complied with the law has no appeal provided for from the award of the Industrial Commission. The entire section including this feature of no appeal has already been held valid. Fassig v. State, ex rel. Turner, Atty. Gen., 95 Ohio St., 232, 116 N. E., 104.
How that feature of the law can be valid while the 50 per cent, penalty provision is invalid is difficult to understand, for the fact that no appeal from the award is provided for the employer does not merely deter him, it actually precludes him, from going into court.
It is argued in this connection that if the 50 per cent, penalty were a payment because of additional expense imposed upon the dependent by the nonpayment of the award, it would be constitutional, but that such is not the case.
How can we assume that the 50 per cent, penalty does not purport to be imposed because of additional expense imposed upon the employe or his dependents by the employer’s nonpayment? Added expense is often incurred by delay in payment of compensation. Added physical injury is sometimes suffered because of lack of funds which would enable one to take prompt means for medical relief. The fact that the penalty is given not to the state, but to the dependents of the employe, would seem to justify the inference that the penalty was imposed, not merely because of violation of the statute, but because of the very fact that additional damage is imposed upon the injured employe and his family by nonpayment of the award.
*540 But those who contest the constitutionality of this provision claim that the case falls within the authority of certain United States decisions which conclude us upon this question. Thus, it is the rule that a statute is void if it imposes such severe penalties in the event the court decides against the appellant .as to make it difficult to resort to the court to test the validity of the act, and the section under consideration here is said to fall within this doctrine. In support of this principle, Cotting v. Kansas City Stock Yards Co., 183 U. S., 79, 22 Sup. Ct., 30, 46 L. Ed., 92, Ex parte Young, 209 U. S., 123, 28 Sup. Ct., 441, 52 L. Ed., 714, 13 L. R. A. (N. S.), 932, 14 Ann. Cas., 764, and Wadley Southern Ry. Co. v. Georgia, 235 U. S., 651, 35 Sup. Ct., 214, 59 L. Ed., 405, are quoted.
These cases, however, are none of them conclusive against the plaintiff. The law which was held unconstitutional in Cotting v. Stock Yards Co., supra, provided severe penalties for each violation of an act which fixed prices upon driving, yarding, watering, and weighing cattle and also fixed prices of hay and feed in the Kansas City Stock Yards. The law applied only to the Kansas City Stock Yards Company, and therefore was held unconstitutional as constituting an illegal discrimination. The Cotting case specifically declined to hold the statute invalid on the ground of the penalty; although the opinion does strongly question the legality of the particular penalties there involved.
Mr. Justice Brewer, in the course of the opinion, points out the fact that the law does not clearly define whether each separate offense of violating the statute is considered to invoke the penalty; that is *541 to say, whether an overcharge on driving, yarding, watering,, or weighing one steer would invoke the penalty, or whether it would be invoked only for each separate shipment of cattle. He says, at page 99 of 183 U. S., on page 38 of 22 Sup. Ct. (46 L. Ed., 92):
“There are, however, other questions which compel notice, and one is that suggested by the seventh section in the statute, which provides a punishment for the first offense of not more than $100, for the second offense not less than $100 nor more than $200, for the third offense not less than $200 nor more than $500 and imprisonment in the county jail not exceeding six months, and for each subsequent offense a fine of not less than $1,000 and imprisonment not less than six months. The language of this section, taken in connection with the balance of the statute, is not entirely clear. The previous prescriptions of the statute are of a certain charge per head. Now, does this section contemplate a separate offense with a separate penalty for each excessive charge per head, or does it contemplate a single penalty for a violation of the statute in respect to the entire number of stock received in one shipment? The difference is significant. Taking the total number shipped to these stock yards in the year 1896, it amounted to an average of about 15,000 head per day. Would that, in case of an excessive charge for each head, mean 15,000 violations of the statute? If so, as after the third offense the fine could not be less than $1,000 for each offense, a single day’s penalties would aggregate at least $15,-000,000. While the fact is not clearly disclosed by the testimony, doubtless the shipments were made *542 by separate shippers in bunches all the way from 50 to 500 in number. If the penalty attaches simply to the charge for each shipment as a single act, the burden, though large, might not be deemed excessive, but if it attaches to that for each particular head of stock the penalties become enormous. It may be said that this is a penal statute, and therefore it is to be construed in favor of the delinquent, and that we have a right to expect that the state courts will construe the penalty as not attaching to the charge for each head of stock, but only to that upon the separate bunches shipped by different individuals. But is the language so clear that there is no doubt as to the construction? Is there not enough in it to justify a construction which may be accepted by the trial courts and approved by the Supreme Court of the state, and the construction of a state statute by the Supreme Court of the state is in a case like this conclusive upon us. Must the party upon whom such a liability is threatened take the chances of the construction of a doubtful statute? If the one construction is placed upon it, then obviously, even accepting the largest estimate of value placed by any witness upon the property of the company, a single day’s violation of the statute would exhaust such entire value in satisfaction of the penalties incurred. * * * It is doubtless true that the state may impose penalties such as will tend to compel obedience to its mandates by all, individuals or corporations, and if extreme and cumulative penalties are imposed only after there has been a final determination of the validity of the statute, the question would be very different from that here presented. But when the Legislature, in an effort to *543 prevent any inquiry of the validity of a particular statute, so burdens any challenge thereof in the courts that the party affected is necessarily constrained to submit rather than take the chances of the penalties imposed, then it becomes a serious question whether the party is not deprived of the equal protection of the laws.
“But it is not necessary to rest our decision upon this consideration, which was not fully discussed by counsel, but pass to a question which is of a kindred nature and in which there is presented no matter of the doubtful construction of a statute.”
The Cotting case, then, questioned the legality of the penalty, not on the ground that a penalty per se is illegal, but on account of the enormous character of the specific penalties involved therein.
In Ex parte Young, supra, the point was squarely decided, that a statute which imposed such enormous penalties that persons affected thereby were Invented from resorting to the courts for the purpose of determining its validity, denied the equal protection and the due process of the law.
In this case the Legislature of Minnesota had created a Warehouse Commission, which fixed rates for railroads at 2 cents per mile instead of 3 cents per mile, and fixed penalties upon violations of the law at from $2,500 to $5,000 for the first offense, and from $5,000 to $10,000 for each subsequent offense together with imprisonment. The court questions (209 U. S., at page 145, 28 Sup. Ct., at page 448 [52 L. Ed., 714, 13 L. R. A. (N. S.), 932, 14 Ann, Cas,, 764]) whether the sale of each ticket in violation of the law would constitute an offense, saying:
“Coming to the inquiry regarding the alleged in *544 validity of these acts, we take up the contention that they are invalid on their face on account of the penalties. For disobedience to the freight act the officers, directors, agents, and employes of the company are made guilty of a misdemeanor, and upon conviction each may be punished by imprisonment in the county jail for a period not exceeding 90 days. Each violation would be a separate offense, and, therefore, might result in imprisonment of the various agents of the company who would dare disobey for a term of 90 days each for each offense. Disobedience to the passenger rate act renders the party' guilty of a felony and subject to a fine not exceeding $5,000 or imprisonment in the state prison for a period not exceeding 5 years, or both fine and imprisonment. The sale of each ticket above the price permitted by the act would be a violation thereof. It would be difficult, if not impossible, for the company to obtain officers, agents, or employes willing to carry on its affairs except in obedience to the act and orders in question. The company itself would also, in case of disobedience, be liable to the immense fines provided for in violating orders of the Commission. The company, in order to test the validity of the acts, must find some agent or employe to disobey them at the risk stated. The necessary effect and result of such legislation must be to preclude a resort to the courts (either state or federal) for the purpose of testing its validity. The officers and employes could not be exp.ected to disobey any of the provisions of the acts or orders at the risk of such fines and penalties being imposed upon them, in case the court should decide that the law was valid. The result would be a denial of any *545 hearing to the company. * * * We have the same question now before us [as in the Gotting cade], only the penalties are more severe in the way of fines, to which is added, in the case of officers, agents or employes of the company, the risk of imprisonment for years as a common felon. * * * It may therefore be said that when the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation, the result is the same as if the law in terms prohibited the company from seeking judicial construction of. laws which deeply affect its rights.
“It is urged that there is no principle upon which to base the claim that a person is entitled to disobey a statute at least once, for the purpose of testing its validity without subjecting himself to the penalties for disobedience provided by the statute in ease it is valid. This is not an accurate statement of the ease. Ordinarily a law creating offenses in the nature of misdemeanors or felonies relates to a subject over which the jurisdiction of the Legislature is complete in any event. In the case, however, of the establishment of certain rates without any hearing, the validity of such rates necessarily depends upon whether they are high enough to permit at least some return upon the investment (how much it is not now necessary to state), and an inquiry as to that fact is a proper subject of judicial investigation. If it turns out that the rates are too low for that purpose, then they are illegal. Now, to impose upon a party interested the burden of obtaining a judicial decision of such a question (no *546 prior hearing having ever been given) only upon the condition that if unsuccessful he must suffer imprisonment and pay fines as provided in these acts, is, in effect, to close up all approaches to the courts, and thus prevent any hearing upon the question whether the rates as provided by the acts are not too low, and therefore invalid. The distinction is obvious between a case where the validity of the act depends upon the existence of a fact which can be determined only after investigation of a very complicated and technical character, and the ordinary case of a statute upon a subject requiring no such investigation and over which the jurisdiction of the Legislature is complete in any event.
“We hold, therefore, that the provisions of the acts relating to the enforcement of the rates, either for freight or passengers, by imposing such enormous fines and possible imprisonment as a result of an unsuccessful effort to test the validity of the laws themselves, are unconstitutional on their face, without regard to the question of the insufficiency of those rates.”
The Young case also, therefore, held not that a penalty is per se illegal, but that the specific penalty involved therein was illegal because of its enormous burdens.
The essential difference in the facts between the instant case and these federal cases is evident. There is a marked distinction between imposing separate penalties upon acts necessarily very frequent, such as the watering of steers in stockyards or the selling of railway tickets, which, in the nature of the case, will occur innumerable times in one day, together with the imposition of the possible penalty *547 of $1,000 or higher for each violation of the law after the third offense, and the facts in the case at bar. In one day violation of the laws questioned in the above cases might well impose a penalty of millions of dollars, a fact which would necessarily keep employers from resorting to the courts. The 50 per cent, penalty imposed under Section 1465-74 could never by any stretch of the imagination involve such an amount for violations of the law occurring in one day. Also the failure to pay a judg ment under the section questioned here would hardly occur very frequently in the business of the employer.
Moreover, the distinction adverted to by Mr. Justice Peckham in the Young case, supra, exists here.
Is not this a case in which the facts involved require no such complicated investigation as is required in a rate case, and over these facts is not the jurisdiction of the Legislature complete in any event?
In Wadley Southern Railway Co. v. Georgia, supra, while the principle of the Young case was adhered to, we find authority for our present holding. The fifth and seventh paragraphs of the syllabus, which we quote for their summary of the case, read as follows:
“A state has power to impose penalties sufficiently heavy to secure obedience to orders of Public Utility Commissions after they have been found lawful or after the parties affected have had ample opportunity to test the validity of administrative orders and failed so to do.
“Where, after reasonable notice of the making of an administrative order, a carrier fails to resort *548 to the safe, adequate, aud available remedy of testing its validity in the courts, and makes an unsuccessful defense by attacking such validity when sued for the penalty, it is subject to the penalty.”
This case is a distinct authority to the effect that, after orders of Public Utility Commissions have been found to be lawful, and the validity of the law has been actually tested in the courts, the carrier is subject to the penalty. Under the theory, held by two members of this court, that the case of Fassig v. State, ex rel. Turner, Atty. Gen., 95 Ohio St., 232, 116 N. E., 104, is a distinct decision made by a unanimous bench, to the effect that the entire section under consideration here (Section 1465-74) is constitutional, we hold that the Wadley case definitely establishes that the employer cannot question this penalty, for its legality has already been established.
To the same effect is the statement of Mr. Justice Brewer in the Cotting case, quoted above, when he said at page 102 of 183 U. S., at page 40 of 22 Sup. Ct. (46 L. Ed., 92):
“If extreme and cumulative penalties are imposed only after there has been a final determination of the validity of the statute, the question, would be very different from that here presented.”
After all there is nothing unconstitutional nor contrary to public policy in the imposition of a penalty. In various branches of the English common law the penalty is recognized as being admirably fitted in the administration of justice to prevent frivolous law suits and defenses interposed for mere delay. Courts are sometimes permitted to fix penalties as part of the costs. This court itself *549 possesses such power under Section 12257, General Code of Ohio, which provides:
“"When, in any such case, the judgment or final order of a Court of Appeals is affirmed, as part of the costs in the case there shall be taxed a reasonable fee, to be fixed by the court not less than twenty-five nor more than three hundred dollars, to the counsel of the defendant. The court also shall adjudge to the defendant damages in any reasonable sum not exceeding five hundred dollars, unless the judgment or final order of the Court of Appeals directs the payment of money and execution thereof was stayed on. error in the Supreme Court when, in lieu of such penalty, it shall bear additional interest, at a rate not exceeding five per cent, per annum, for the time it was stayed, to, be ascertained and awarded by the court. If the Supreme Court certify in its judgment that there was reasonable cause for the proceeding in error, neither such fee, additional interest, nor penalty, shall be taxed, adjudged or awarded.”
Is not the purpose of the penalty here considered the same as that contained in the above and similar provisions of the general law, namely, to prevent defenses imposed merely for delay? And in the exercise of the power granted by Section 35, Art. II, of the Constitution, to pass a compulsory compensation law, in the words of the syllabus in Fassig v. State, ex rel. Turner, 95 Ohio St., 232, 116 N. E., 104, is not the General Assembly authorized to include this penalty as a reasonable provision “necessary to make the law effective and to accomplish the purpose expressed in the constitutional provision referred to?”
*550 Third, an employer who fails to comply with the law waives his right to attack the constitutionality of the law. He chooses the advantages which go with non-compliance with the act and he cannot complain of the disadvantages which accompany his non-compliance. He cannot at once accept the law’s benefits and disclaim its burdens. It is the general rule that the right of waiver extends to almost all descriptions of contractual, statutory, and constitutional privileges. The individual can waive all rights or privileges, whether secured by contract, conferred by statute, or guaranteed by the Constitution, provided such rights or privileges rest in the individual and are intended for his sole benefit. 27 Ruling Case Law, 906.
It seems that constitutional provisions intended to protect property may in all instances thus be waived. 12 Corpus Juris, 770. A waiver of a constitutional provision precludes the party waiving it from afterward claiming protection under it, even though it was adopted solely for his benefit. 12 Corpus Juris, 170, Section 191.
“A person who has participated in proceedings under a statute, or who has acted under the statute and in pursuance of the authority conferred by it, or who has claimed the benefit of the statute to the detriment of others, or who asserts rights under it, may not question its constitutionality.” 12 Corpus Juris, 769.
Finally, we hold that this case has already been decided in the case of Fassig v. State, ex rel. Turner, 95 Ohio St., 232, 116 N. E., 104. In the Fassig case the contention of the plaintiff in error was that Section 27 of the Workmen’s Compensation Act, *551 which, is the exact section here attacked, is obnoxious to Section 16, Art. I, of the Bill of Rights, which provides that all courts shall be open, and every person shall have remedy by due course of law; that the section authorizes the taking of property without due process of law, and denies the equal protection of the laws guaranteed by the federal Constitution.
These are the exact objections which are raised in this case to the validity of this same section.
The brief of the plaintiff in error in the Fassig case raised the precise question before us herein. “As we have before suggested,” plaintiff in error says in his brief, “the section in controversy makes the employer liable without fault and leaves it to the Commission to determine the extent of his liability, under certain statutory limitations. If Tie fails to pay the award he is mulcted in a penalty of fifty per cent. (50%), which goes to the injured employe.” Citing the case of Coal Co. v. Rosser, 53 Ohio St., 12, 41 N. E., 263, 53 Am. St. Rep., 622, in which a law providing for the allowance of an attorney fee to the successful litigant in actions for wages was held unconstitutional, the plaintiff in error says:
“The situation at bar is much more obnoxious than there, for, if the employer fails to pay the compensation awarded within 10 days the penalty is fixed by statute without giving him an opportunity to appear in court, for the purpose of resisting such penalty in case he should be unsuccessful when sued on the liquidated claim for damages.”
¡Plaintiff in error considers this question fully for seven pages of his brief, citing a number of cases *552 upon the specific question of the imposition of the penalty in this Section 1465-74.
That this question was in the Fassig case is further shown by the fact that in the opinion of the Court of Appeals, Judge Allread, speaking for the court, which unanimously sustained the validity of Section 1465-74, General Code, said:
“Statutes providing for double and even treble damages in favor of the injured party, and against the party in default have been upheld. * * *
“The conclusiveness of the award, the added penalty, and the furnishing of the state’s counsel, do not violate the equal protection provision of the Constitution, in view of the nature of the remedy and the purpose to be accomplished. * * *
“The cases holding that allowances of attorneys fees and penalties in favor of the plaintiff in civil cases are in violation of the equal protection provision of the Constitution, involved no question of public policy behind the enforcement of the civil liability.”
Judge Johnson in his opinion, at page 236 of 95 Ohio St., at page 105 of 116 N. E., speaking of the tenor and meaning of Section 35, Art. II, of the Constitution, explains the purport of the decision in the Fassig case as follows:
“It is manifest that the paramount purpose of the amendment was to leave no doubt as to the power of the Legislature to pass á compulsory act for the establishment of a state insurance fund to be administered by the state, to which fund employers should be compelled to contribute. It empowered the General Assembly to take away any or all rights *553 of action or defenses from employes or employers, subject to certain conditions named. * * *
“The pertinent part of Section 27, which is attached, is as follows: ‘Any employe whose employer has failed to comply with- the provisions of section twenty-two hereof, who has been injured in the course of his employment, wheresoever such injury has occurred, and which was not purposely self-inflicted, or his dependents in case death has ensued, may, in lieu of proceeding against his employer by civil action in the courts, as provided in the last preceding section, file his application with the state liability board of awards for compensation in accordance with the terms of this act, and the board shall hear and determine such application for compensation in like manner as in other claims before the board; and the amount of compensation which said board may ascertain and determine to be due to such injured employe, or to his dependents in case death has ensued, shall be paid by such employer to the person entitled thereto within ten days after receiving notice of the amount thereof as fixed and determined by the board; and in the event of the failure, neglect or, refused of the employer to pay such compensation to the person entitled thereto, within said period of ten days, the same shall constitute a liquidated claim for damages against such employer in the amount so. ascertained and fixed by the board, which with an added penalty of fifty percentum, may be recovered in an action in the name of the state for the benefit of the person or persons entitled to the same. And any employe whose employer has elected to pay compensation to his injured, or to the dependents of his *554 killed employes in accordance with the provisions of section twenty-two hereof, may, in the event of the failure of his employer to so pay such compensation or furnish such medical, surgical, nursing and hospital services and attention or funeral expenses, file his application with the state liability board of awards for the purpose of having the amount of such compensation and such medical, surgical, nursing and hospital services and attention or funeral expenses determined; and thereupon like proceedings shall be had before the board and with like effect as hereinbefore provided.’
“The sections preceding Section 27 deal with three classes of employers:
“First. Employers who comply with the provisions of the statute and pay premiums into the state insurance fund under Section 22.
“Second. Employers who are authorized under that section by the Industrial Commission to directly compensate their injured employes instead of paying premiums to the state insurance fund.
“Third. Employers who do not comply with the law.
“As to employes of employers who do not comply with the law, Section. 26 provides that such employers shall be liable to their employes for damages suffered by reason of personal injuries sustained in the course of employment caused by the wrongful act, neglect, or default of the employer, or his agents or employes, and in such case the defendant shall not avail himself of the defense of the fellow-servant rule, of the assumption of risk, or of contributory negligence; and Section 27 then enacts that any employe, whose employer has failed to com *555 ply with the provisions of the law, who has been injured in the course of employment, etc., may, in lieu of proceeding against his employer by civil action in the courts, file his application with the Commission for compensation in accordance with the terms of the act.
“It will be observed that the employe of such an employer has two remedies, and he must elect which one he will pursue. He cannot have both. He may sue his employer, as at common law, and in that suit he is permitted to recover whatever damages he is able to show he has sustained; or, he may, in lieu of such suit, apply to the Commission for compensation under the act. In the latter event, the board is required to proceed in like manner as in other claims. They must find whether the employer is one within the terms of the act, that is, whether he had five or more employes regularly engaged, etc., whether he had paid premiums to the state insurance fund, whether the claimant has suffered an injury which he received in the course of his employment, and, if so, its nature and extent, and whether it was self-inflicted. If the claimant is one who is shown to be entitled to compensation, the amount is fixed in accordance with the provisions of the statute. In other words, the proceeding where the employe ashs for compensation is up to this point precisely as if the employer had complied with the lam.. It is then the duty of the Commission to order the employer to pay the amount of the award to the employe, ‘and in the event of the failure, neglect or refusal of the employer to pay such compensar tion to the person entitled thereto, within said period of ten days, the same shall constitute a liqui *556 dated claim for. damages against such employer in the amownt so ascertained and fixed by the board, which with am added penalty of fifty per centum, may be recovered in an action m the name of the state for the benefit of the. person or persons entitled to the same/
“The grant of power to the General Assembly to pass a compulsory law carries with it, as incident thereto, the power to include all such reasonable provisions as are necessary to make the law effective. The proceeding laid down is in full keeping with the provisions of Section 35 of Article II of the Constitution, and is one to compel the employer to perform his part in the general scheme of industrial protection.
“The plaintiff in error contends that his constitutional rights have been infringed in the respects above set forth. While it camtot be said that one who comes into court, confessing that he has failed to comply with the express provisions of a statute, is to be denied the privilege of asserting the invalidity of the statute as the reason for his noncompliance with it, Still he must realize that any penalties that are visited upon him for such noncompliance with the terms of the statute are not to be complained of in the event of its being finally upheld. While different provisions of the Constitution are referred to as being violated, the contention as to all rests upon substantially the same grounds.”
Judge Johnson then takes up the objection that the right of trial by jury is violated by this section, including its 50 per cent, penalty provision. He disposes of this contention as follows:
“This is a necessary proceeding to compel the *557 employer to do the thing which the General Assembly was authorized to require by the constitutional amendment. It is at once manifest that the provisions of the section whose validity is attacked are important and essential steps in the administration of the law itself and are vital to the accomplishment of its beneficent purpose. The suit for the liquidated or stipulated amount is not a suit as at common law by the employe for damages sustained. The employe has waived the right to bring such a suit by claiming compensation. A suit for damages is one for the recovery of an unliquidated sum in an action at law. The suit by the state for the amount of the compensation under Section 27 is not one for negligence of any kind. It has no regard for such a thing. It is simply based on the fact of injury in the course of employment. The recovery in the damage suit is presumed to wholly compensate the injured person, but when he elects to accept compensation it is fixed in accordance with the schedule. The action to recover it is a statutory action, and under the amendment the statute properly fixes the measure of recovery. The action against the employer to recover the amount so ascertained and fixed must be brought in a court of general jurisdiction, and the defendant employer is entitled to a trial by jury. He is entitled to make the defense that he is not an employer of five or more employes, etc.; that the injury to the beneficiary was not received in the course of employment, or that it was willfully self-inflicted; or he might show that he had paid his premium into the insurance fund. The defense that he would not be entitled to make in the case simply goes to the amount of compensation, for *558 that is fixed pursuant to the statute. If the issues stated are found against him, and he pays the amount fixed by the board, he has only paid what other employers pay who comply with the provisions of the law, together with the penalty which the law imposes on him for not obeying it. Inasmuch as the amount recovered is not determined by proof of the actual damages sustained, but is such an amount as is fixed by the statute when the administrative board has ascertained the facts to which the statute would apply, there is nothing for the jury to pass upon on that question. It is a sum that is liquidated or stipulated by the statute.”
Then he says at page 246 of 95 Ohio St., at page 108 of 116 N. E.:
“Much that has been already said applies with equal force to the remaining claims of plaintiff in error that the section in question denies to the employer in question the due process of law and the equal protection of the law, in violation of the provisions of the state and federal Constitutions referred to.”
The first and third paragraphs of the syllabus in the Fassig case read as follows:
“1. In the exercise of the power granted by Section 35, Article II of the Constitution, to pass a compulsory compensation law, the General Assembly is authorized to include all ,such reasonable provisions as are necessary to make the law effective and to accomplish the purpose expressed in the constitutional provision referred to.
“3. The provisions of Section 27 of the Workmen’s Compensation Act (103 O. L., 72, 82), constitute a valid exercise of the legislative power, not *559 repugnant to the federal or state Constitution, nor to any limitation contained in either.”
This judgment was concurred in by the entire court, and on its face applies to the entire section, including the 50 per cent, penalty provision. _
_ For the above reasons we assert and maintain the validity of Section 1465-74 of the General Code.
Wanamaker, J., concurs.